<hr>

CASE 34—PETITION EQUITY—MAY 19.

## Carter v. West, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. ATTORNEY AND CLIENT—PRIVILEGED COMMUNICATION.—An attorney is not permitted to testify as to communications made to him in his professional character by his client, unless the client consents; and neither the cessation of the employment nor the death of the client will render such testimony competent.     Nor is the rule confined to communications relating to the prosecution of a pending or contemplated suit.

   Communications made by the purchaser of real estate to an attorney whom he has employed to see that he gets a good title, and to prepare a deed, are within the rule.

2. VOLUNTARY CONVEYANCE BY CLIENT TO ATTORNEY—BURDEN OF PROOF.—Where a voluntary conveyance has been made to an attorney by his client, in a suit by the grantor or his heir to set aside the deed, the burden is upon the grantee to show that the transaction was free from undue influence and fraud.

3. SAME—EVIDENCE.—Land purchased with pension money having, by direction of the purchaser, been conveyed to her for life, remainder to her attorney, in an action by her heirs to annul the deed as to the attorney, the declarations of the purchaser, subsequent to the making of the deed, that the attorney had in the main obtained her pension, were competent, as tending to show the mistaken belief under which she acted, the fact being that he had not procured the pension.

4. AMENDED PETITION.—The court did not abuse its discretion in allowing plaintiffs to file an amended petition after judgment for them had been rendered, the judgment being set aside for the purpose.

SAMUEL McKEE FOR APPELLANT.

1. A voluntary settlement can not be set aside in the absence of clear proof

Carter v. West, &c.

of fraud or undue influence. (Huguenin v. Baseley, 14 Ves., 290; Toker v. Toker, 31 Beav., 629; Villers v. Beaumont, 1 Vern., 100; Lumley v. Desborough, 22 L. T. (N. S.), 597; Profit v. Lawless, L. R., 2 P. & ID., 462; Jennings v. Broughton, 17 Bev., 239; Smith v. Kay, 7 H. L., 750; Mowatt v. Blake, 31 L. T., 287.)

A gift obtained by fraud or undue influence can not be set aside if the donor has acquiesced in the transaction after becoming aware of his right to set it aside. (Hoghton v. Hoghton, 15 Beav., 278; Wright v. Verplank, 2 K. & J. 1; Crozier v. Acer, 7 Paige, 137; McNaughton, v. Partridge, 11 O., 223; Kerr on Fraud, 296.)

2. The rule as to priviledged communications does not apply as to the testimony of Samuel McKee. (Civil Code, sec. 606, sub-sec. 5; Taylor on Evidence, sec. 928; Russell v. Jackson, 9 Hare, 396; Caldwell v. Davis, 10 Col.; 1 Greenleaf on Evidence, 239, 240; Machette v. Wanless, 2 Col., 175; Blackburn v. Crawford, 3 Wall., 175; Gaul v. Tower, 85 Mo., 249; Graham v. O'Fallon, 4 Mo., 358; Hager v, Schindler, 29 Cal., 68; Hatton v. Robinson, 14 Pick., 416; De Wolf v. Streater, 26 Ill., 230; Randall v. Yates, 48 Miss., 689; Burns v. Foots, 15 Ill., 50; Corse v. Swan, 30 Ver., 6; Russell v. Jackson, 15 Jurist.)


O. J. OWEN BREWSTER, R. M. BUCKLEY for appellee West.

1. The confidential relation existing between the parties raises a presumption of fraud which has not been overcome. (Bigelow on Fraud, pp. 269, 270, 271 and 374; Story's Eq. Jur., sec. 310; 11 Lawyers' Rep. Ann., 65; Stewart on Marriage and Divorce, 28; Pierce v. Pierce, 71 N. Y., 154; Russell's Appeal, 75 Pa., 269; 2 Lea, 126; 92 Pa., 265; 71 Ind., 255; Frazier v. Bass, 66 Ind., 1; Tarbell v. Tarbell, 10 Allen, 278; Taylor v. Rickman, 1 Bush, Eq. (N. C.), 278; Wood v. Chitwood, 12 Cent. Rep., 248; Woodruff v. Clark, 42 N. J. L., 198; Gould v. Gould, 35 N. J, Eq., 37, 562; Lane v. Lane, 76 Me., 525; Carleton v. Lovejoy, 54 Me., 445; Wing v. Merchant, 57 Me., 383; Jennings v. Davis, 31 Conn., 134; Lloyd v. Pughe, L. R., 8, ch. 88; Re Briton's Estate, L. R., 17 ch. Div., 416; 2 Story's Eq. Jur., 1375; Fisher v. Bishop, 10 Cent. Rep., 707; s. c. 108 N. Y., 25; Weller v. Weller, 112 N. Y., 655; Jones v. Bolles, 9 Wall., 364; Adkins v. Dick, 39 U. S. (14 Pet.), 114; 15 Wall., 548; 14 Ves. Jr., 273; 6 Ves. Jr., 266; Re Smith, 95 N. Y., 516; Haydock v. Haydock, 34 N. J. Eq., 570; Kerr on Fraud and Mistake, p. 183; Perry on Trusts, 197.)

2. The objection to the testimany of Samuel McKee must be sustained. (Civil Code, sec. 606, sub-sec. 5:)


C. B. SEYMOUR for appellees.

1. If Milly O'Bannon caused the deed to be made under the belief that Carter was her nephew, it should be remodeled. It is equally clear that if Carter was her attorney, or had so recently been so as to exer-

Carter v. West, &c.

cise a controlling influence over her, the deed should be remodeled. (Bigelow on Fraud, vol. 1, pp. 263 and 378.)

2. The testimony of Samuel McKee, as to communications made to him by his client, was properly excluded. (Civil Code, sec. 606, sub-sec. 5; Greenleaf's Evidence, vol. 1, sec. 241.)

J. M. CHATTERSON, SAMUEL S. BLITZ on same side.

1. The confidential relation existing between Milly O'Bannon and Carter makes the conveyance to him, under the circumstances of this case, absolutely void. (Huguenin v. Basely, W. & T. Leading Cases Eq., vol. 2, Pt. 2, p. 122; Story's Eq. Jur., secs. 307, 311 and 410; Harris v. Tremenber, 15 Ves., 401; Sharswood on Prof. Ethics, 109; White v. Smith, 51 Ala., 405; Hoghton v. Hoghton, 15 Beav., 288; Gibson v. Joyes, 6 Ves., 268–278; Bigelow on Fraud, 269; Adams' Equity, 184; Pomeroy's Eq. Jur., secs. 960 and 1052; Morgan v. Minett, L. R., 6 ch. Div., 638; Hatch v. Hatch, 9 Ves., 292; Mills v. Mills, 26 Conn., 213; Hawley v. Cramer, 4 Cowan, 717; Mott v. Harrington, 12 Vt., 199; 6 Hand (N. Y.), 51; 11 Sickles (N. Y.), 32; James v. Langdon, 7 B. M., 195; Bispham's Eq., 213; Beard v. Campbell, 2 Mar., 561.)

2. What Milly O'Bannon said to Samuel McKee, her attorney, in reference to drafting the deed, is incompetent as evidence. (Civil Code, sec. 606, sub-sec. 5; Bigelow on Fraud, sec. 186; Rice v. Rice, 14 B. M., 416.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

Milly O'Bannon, a colored woman over sixty years of age, having drawn a considerable sum of money as a pension, purchased with a part of it a house and lot, the deed being made to her for life with remainder to the appellant, Samuel Carter; but in the event he did not outlive her, then the fee-simple to vest in her. It recited that he was her nephew, when, in fact, they were not related. She died childless, and the appellees, who are collateral kindred, brought this action to annul the deed, as to Carter, upon the ground that it was procured through undue influence and fraud upon his part. This was, in substance, the averment of the petition, the particular circumstances of the alleged fraud as set forth, being, that he falsely represented to her he was related to her, and that he had been mainly instrumental in pro-

curing her pension. The court set aside the deed, basing its opinion largely upon the ground that the relation of attorney and client existed between them. Its attention being called to the fact that this was not averred in the petition, the judgment was, upon Carter's motion, set aside, and thereafter the court, over his objection, permitted an amended pleading, averring the existence of such relation, to be filed.

Waiving the question whether this was necessary to the introduction of testimony upon this point, yet there was certainly no abuse of that broad discretion which, in furtherance of justice, has been wisely given to the trial court as to permitting a party to amend his pleadings. (Civil Code, section 134.)

An attorney was retained by Milly O'Bannon to see that she got a good title to the property, and he prepared the deed that was made to her. It does not appear that Carter had any direct connection with it, save he went for the attorney but, as he testifies, by the direction of the old lady. He was not present when the deed was prepared. The testimony of the attorney as to what she then said to him was held by the lower court to be incompetent.

Section 606, sub-section 5, of our Civil Code, says: "No attorney shall testify concerning a communication made to him in his professional character by his client, or his advice thereon, without the client's consent." This provision is equivalent to the "privileged communication" of the common law, and is, in substance, merely declaratory of it. The rule exists because it is necessary to the safe and pure administration of justice. Public policy requires it. If it were not the rule, no man would

·dare to consult an attorney. It is not personal to the attorney, but for the protection of the client. The cases are somewhat conflicting whether it applies where one is merely called in to prepare a deed, and directions are given by the employer as to how it is to be done. Indeed, it was attempted in England at one time to confine the rule to communications made in the prosecution or defense of a suit, either pending or about to be instituted. This was, however, without reason, and it is now the settled rule at common law that, if the communication be to one who is at the time professionally employed and occupies the attitude of a legal adviser, it is privileged, and the seal of silence is upon it, subject to be ·broken by the consent of the client only.

In Crisler v. Garland, 11 Smedes & Marshall, 136, an attorney had been called in his professional character to write a deed, and communications were made to him as to the object of it; and although he declined the retainer, yet he was not allowed to disclose the communications.

The case of Bank of Utica v. Mersereau, 3 Barbour's ·Chancery, 528, is to the same effect; and undoubtedly the communication to be privileged need not relate to the prosecution or defense of a pending or contemplated suit.

It is said by Mr. Greenleaf, in his work on Evidence, volume 1, section 241, that the rule applies, although the attorney be consulted as a conveyancer merely; and it seems to us it should, in view of its purpose, have a broad and liberal construction. If the attorney be applied to for aid in his professional character, the veil of secrecy should be made to cover any communication made to him by the client, subject to be lifted by the client only,

and this veil is not removed by the cessation of the
employment, or the death of the client. (1 Greenleaf on
Evidence, section 243; Bank of Utica v. Mersereau,
*supra.*)

In this instance the attorney was acting in his profes-
sional character. He was the legal adviser of the party,
and not a mere scrivener. She was relying on him to see
that she got a good title. He was called upon by her in
his professional character; what she said to him was in
that character, and was, therefore, in its nature, private.
It was said under the seal of professional confidence, and
in the absence of her consent was incompetent evidence.

The reply to the amended petition, averring the exist-
ence of the relation of client and attorney between Milly
O'Bannon and the appellant, Carter, sets out in the third
paragraph the circumstances under which the deed was
made; by whom it was drawn, and avers that the appel-
lant had no connection with it. This was not replied to;
and it is, therefore, urged that it stands as an admitted
fact, Carter was not her attorney. If he in no way occu-
pied that relation to her, then it is merely a question
whether the deed was the result of undue influence and
fraud upon his part, with the burden of showing it upon
the appellees. If, however, he did occupy that relation,
then the burden shifts, and in order to uphold the volun-
tary conveyance it must clearly appear it was free from
all undue influence or fraud. (Story's Eq. Jurisprudence,
section 311.)

This is true, although he was not her attorney in the
transaction under investigation. It is sufficient if he was
her general adviser. The amended petition did not aver
that he was her attorney, as to the making of the deed,

Carter v. West, &c.

but that he was her general adviser in his character of
claim-agent and lawyer.   The undenied third paragraph
of the answer is but a detail of evidence, and is, in sub-
stance, but a denial of the existence of the alleged rela-
tion between them; and if it were necessary to allege it.
in order to prove it, yet the failure to deny the particular
matters of evidence, stated in the reply, did not render it
an admitted fact that the relation of lawyer and client
did not exist.   The facts stated were not an avoidance of
what was charged in the amended petition.

It is shown that Carter claimed, in the old lady's
presence, that he was kin to her.   It is certain that he
was acting for her in the character of legal adviser as to
her application for a pension, and probably otherwise.
His own pleadings admit that he wrote letters for her as
to her claim for a pension.   To other persons he claimed
to have been mainly instrumental in getting her money—
whether the pension money or some bounty money,
which was not gotten until after the deed was made,
does not clearly appear.   Certain it is, she thought his
services mainly procured the pension, when they did not,
and it is difficult to see how this belief arose, or a desire
to say he was kin to her when he was not, unless by
reason of suggestion from him and his influence over her.
Her statements to others, though made subsequent to
the making of the deed, that the appellant had, in the
main, obtained her pension, were competent as tending
to show the belief under which she had acted; and even
aside from them the circumstances proven are sufficient
to support the conclusion of the chancellor.   She was
quite old and wholly uneducated.   Her condition made
her an easy subject of control.   The parties were not deal-

ing at arms length, but a relation of confidence existed. The chancellor, who likely knew the parties and witnesses, has found, as a matter of fact, that the deed was the result of undue influence and fraud upon Carter's part, and this finding should not, in our opinion, be disturbed.

Judgment affirmed.