# Payne v. Payne's Adm'r.

April 28, 1942.

Foster E. De Wees for appellant.

Brent C. Overstreet for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The appellant, Mabel Payne, and John L. Payne (both of the colored race) were married in Louisville, Jefferson county, Kentucky, in November, 1908, and lived together in Louisville several years thereafter. The evidence is somewhat confusing as to the exact date

appellant left Louisville but in any event not before 1927 or perhaps a few years later, more probably about 1934, when appellant left Louisville and went to Cincinnati, Ohio, and engaged in the restaurant business. She was also a preacher or evangelist and did some church work while she was in Cincinnati. Her husband, John L. Payne, stayed in Cincinnati with her part of the time and was in Louisville part of the time, and appellant visited Louisville occasionally during the time she was in business in Cincinnati. About 1936 appellant went to the city of New York where she was engaged as a practical nurse for an invalid child and remained there until her return to Louisville on or about March 2, 1940.

In December, 1938, John L. Payne married Alene Smith and they resided together in Louisville as husband and wife until October 19, 1939, when he was struck and killed by an automobile. Alene Smith Payne qualified as administratrix of the estate of the deceased and instituted an action to recover for his death, which action was settled by compromise on March 2, 1940, for the sum of $1,250. It appears, however, that after the settlement had been agreed on, but before the money was paid over to the administratrix or distributed, Alene Payne resigned as administratrix and Edward L. Mackey, appellee herein, public administrator of Jefferson county, was appointed administrator de bonis non of the estate of the deceased and immediately on the same day distributed the assets of the estate by the issuance of checks as administrator, and the checks were deposited or cashed on the same day. On or about the same day the settlement was made and the estate distributed the appellant arrived in Louisville from New York and claimed that she and the deceased had not been divorced and that she was the lawful wife of the deceased and entitled to share in the distribution of the estate and made demand upon appellee for settlement which he refused, whereupon she brought this action to recover of appellee the sum of $1,250, the full amount paid in settlement for the death of deceased. The original answer consisted of a traverse only and the evidence was taken and the case submitted to the court without the intervention of a jury and the court dismissed appellant's petition. This appeal follows.

It is not denied that appellant and the deceased were lawfully married in November, 1908, nor is it denied that

the deceased and Alene Smith Payne were married, or a marriage ceremony performed, in December, 1938. The questions in issue are (a) whether appellant and the deceased were ever divorced; and (b) whether or not the evidence for appellant was sufficient to overcome the legal presumption, if any, that deceased's former marriage had been annulled, arising out of the fact that the deceased entered into a second marriage. We will discuss the points in the order named.

Appellant alleged in her petition that she and the deceased had never been divorced, and appellee in his answer denied that allegation but he offered no evidence of any character, record or otherwise, tending to show that the parties had been divorced, but insists that since the deceased entered into a second marriage which was regular on its face according to the records, the presumption is that deceased was divorced and the burden then shifted to appellant to overcome that presumption which, it is insisted, she failed to do. Appellant testified that she and deceased never became estranged or separated and that the deceased was out of employment and she went to Cincinnati and engaged in the restaurant business to earn a living and while she was there the deceased visited her many times and would return to Louisville, and in the meantime she visited him in Louisville a number of times. She testified positively that she never applied for a divorce at any time or place and had no notice or knowledge of any divorce ever having been sought by the deceased. It appears from all the evidence that the deceased resided in Louisville at the time of his marriage to appellant in 1908 until the time of his death, with exceptions of temporary visits to Cincinnati with appellant while she was engaged in business there. Since Jefferson county, Kentucky, was the legal residence of the deceased it is fair to presume that if he had applied for a divorce or had been granted a divorce the action would have been brought in Jefferson county, a fact which the court records would have disclosed.

W. C. Brown, a member of the Jefferson County Bar, was called as a witness for appellant and was asked to state whether or not John L. Payne ever consulted him about a divorce. The question was objected to on the ground that it was private communication between attorney and client and the court sustained objections and suggested that they get it in the record by an avowal to

464

which appellant excepted and by agreement of counsel the following questions were asked and the following answers made thereto:

"Q. State when John Leonard Payne consulted with you about a divorce and what he said to you? A. On the 2nd day of July, 1938, Leonard Payne came to my office and employed me to get a divorce.

"Q. From whom? A. From Mabel Payne. He paid me a ten-dollar retainer fee. He was to pay $37.50. He was to pay $17.50 and I was then to file the suit, because there was a warning order attorney had to be appointed, and he would bring me all the information as to where the wife's whereabouts was on the following week and make the seven-dollar-and-a-half payment. So, he never did come back.

"Q. After that he was killed? A. Yes, sir.

"Q. He consulted you after he was married to his second wife, Alene Payne? A. On the 2nd day of July he consulted me and paid me ten dollars—paid me on that divorce and was to come back on the week following and pay seven and a half more and bring me the information as to his wife's whereabouts and I would file the suit. He never did come back and I did not file it."

We think this evidence was incompetent. Section 606, Subsection 4, Civil Code of Practice; Carter v. West, 93 Ky. 211, 19 S. W. 592, 14 Ky. Law Rep. 191; Standard Fire Insurance Co. v. Smithhart, 183 Ky. 679, 211 S. W. 441, 5 A. L. R. 972; Goode v. Commonwealth, 241 Ky. 414, 44 S. W. (2d) 301; Wigmore on Evidence, Vol. 8, Section 2323. The court did not err in sustaining appellee's objections to this evidence.

Anna Payne, mother of deceased, testified that after appellant left Louisville the deceased came back home and was out of work and told appellant he could not support her because he had no work and he came back to her home and stayed until he died. She did not know how many years appellant had been gone before deceased's death but later said "seven or eight years, I reckon, maybe longer * * * but he went where she did." Later she said that appellant came back home two or three times. She said she could not tell just how long

appellant had been gone before deceased's death but it was not so long and that she wrote letters to her a short time before deceased's death and that appellant was in New York. She further said that she wrote appellant a letter, or had her daughter Emma Payne to write for her, in February, 1940, advising appellant that John was dead and that she received a letter from appellant in February after she wrote appellant advising her of deceased's death.

Noble McDowell, a brother of appellant, testified that he was with the deceased when he obtained his marriage license to marry Alene Smith Payne. He said that the deceased told him that he was going to get married and wanted him to go to the clerk's office with him. He was asked to state what conversation, if any, took place in the clerk's office and the substance of his answer was that the clerk asked the deceased if he had been married and he answered in the affirmative. The clerk then asked him where his wife was and the deceased said she was still living. The clerk then told him that he could not marry if his wife was still living and then someone present told him that he did not have a divorce and the clerk told him he was "taking a terrible chance if his wife ever come back—he would be in a bad shape." He further said that he advised the deceased that he should not marry and told him that he did not think that appellant was dead.

J. W. Albers, clerk of the Jefferson County Court, was called as a witness for appellee and testified from the records which showed that deceased had married appellant in 1908 and had married Alene Smith Payne in 1938. In reference to what took place in the clerk's office at the time the deceased obtained the license to marry Alene Smith Payne the clerk said that he had no record of any statements made by Noble McDowell, and that the records showed that the deceased stated that he was a widower and that Alene Smith said that she had been previously married and that she was a widow, and both said that their respective former spouses were dead. It is to be noticed that the clerk merely stated that he had no record of the conversations that Noble McDowell testified to at the time deceased obtained the license to marry Alene, but he did not state that those conversations did not take place. Mr. Albers testified before Noble McDowell testified, but Albers was not called in rebuttal

nor was there any other evidence offered in contradiction to McDowell's evidence.

The appellee, testifying for himself, said that he was appointed administrator de bonis non of the estate of the deceased on March 2, 1940, and immediately on the same day settled the estate by distributing the proceeds thereof to the parties whom he considered entitled thereto; that Foster De Wees, now attorney for appellant, was present when the settlement was made and made no objections thereto and did not inform him that there was another wife by the name of Mabel Payne. It appears that Mr. De Wees received a check for $259 representing funeral expenses paid by Anna Payne, mother of deceased, $200 of said amount having been advanced by the W. P. A. Agency of the Federal Government for burial expenses of the deceased who was an employee of that agency. On cross-examination Mr. De Wees asked appellee if he recalled having discussed the case with him in October, 1939, stating that they had information that Mabel Payne was living but he could not file an intervening petition because she was not there, to which question appellee answered:

"I don't recall that. You may have discussed it with me, but I do not recall that. My first independent recollection of the case is March 2nd when I was appointed."

John L. Kilgariff, a member of the law firm of Davis, Boehl, Viser and Marcus, representing defendant or the insurance carrier, testified that he received information in October, soon after the death of deceased, that probably there was another living wife from whom deceased had not been divorced and for that reason he did not think it advisable to pay the money over to Alene Smith, administratrix, since she might not be the lawful wife of the deceased or a distributee of the estate, and it was on his insistence or suggestion that Alene resign as administratrix and appellee was appointed administrator de bonis non. He said he received his information concerning the probability of another living wife through Mr. De Wees.

Mr. De Wees was called as a witness for appellee and testified that deceased's mother and sister consulted him about a suit that had been filed by Alene Payne for the wrongful death of deceased and that she claimed to

be deceased's widow. They asked him what would happen if deceased had not 'been divorced and he advised them that in that event deceased's marriage to Alene would be bigamous and void. He said they told him that appellant had left Cincinnati and gone to New York but they did not know her address but they thought that they could get that information from Callie Stephenson at Lexington, Kentucky; later he obtained appellant's address and wrote her a letter in February, 1940, advising her of the death of deceased and that an action had been filed by Alene Payne who claimed to be the widow of deceased; that about March 2, the day the settlement was made, appellant appeared in Louisville but the estate was distributed before he had time to do anything; that previous to that date he had not actually been employed by appellant and she was not his client at that time and his correspondence with her went no further than to advise her of the death of the deceased and of her rights. He further testified that Anna Payne had paid the funeral expenses of deceased in the amount of $259 and that he was employed by her to obtain a refund of this amount from the estate, which he did, but he did not represent appellant at that time. He further said that he had advised the attorneys representing the defendant in the action filed by Alene Payne and all parties concerned that there probably was another wife from whom deceased had not been divorced, and said to them: "This is a hot case; better watch out. * * * someone is going to show up and somebody is going to be in trouble." He admitted, however, that he said nothing to appellee about these matters on the day the case was settled and when he obtained a check for $259 to reimburse the mother of deceased for funeral expenses.

At the close of the evidence the court permitted appellee to file an amended answer pleading laches and estoppel. It is insisted that appellant was guilty of laches and should be estopped from asserting her claim because of the events set out above. Appellant was in the state of New York at the time of the death of deceased and did not receive information of his death until February, 1940, or about four months after the death of deceased, and as soon as she received the information she immediately came to Louisville and asserted her rights. We do not think in these circumstances she was guilty of laches. The plea of estoppel is based upon the fact that Mr. De Wees, who represents her in this action, sat by and saw

the estate distributed by appellee and accepted the check for $259 to reimburse Anna Payne for funeral expenses. It is the rule that a client is bound by the fraudulent or negligent acts, conduct or omission of his attorney in matters within the scope of the attorney's authority. Douthitt et ux. v. Guardian Life Insurance Co. of America, 235 Ky. 328, 31 S. W. (2d) 377. It may be conceded that Mr. De Wees' conduct was sufficient to estop appellant from asserting her claim had he been representing her at that time or acting within the scope of his authority, but, since it does not appear that he had been employed by her at that time or that the relation of attorney and client actually existed between them, we do not think his conduct can be attributed to appellant.

Appellee insists that the evidence is insufficient to overcome the presumption of a divorce arising out of the fact that the deceased entered into a second marriage, and relies upon the case of Scott's Adm'r et al. v. Scott, 77 S. W. 1122, 25 Ky. Law Rep. 1356. In the Scott case the facts and circumstances are set out in headnote 1 thereto as follows:

"In an action to determine the right to life insurance it was conclusively shown that deceased had separated from his first wife more than 15 years before his death; that he left the state avowedly to live in another state long enough to get a divorce; that following his return after a long absence he married a second wife, and after her death a third, in whose favor the policy was drawn; that he lived with them for more than 30 years, publicly recognizing each in turn; that the first wife, who continued to reside in the same place during that time, lived near enough to meet the second before her death, and to see the third often, and was never known to deny that he had been divorced from her, or to make complaint of his marriage to either; and, in addition to that, she permitted two of her daughters to live some time with their father and his third wife. Held, that the presumption of the legality of the last marriage created by this showing shifted to the first wife and others claiming with her the burden of establishing its illegality."

It was held that the mere denial of the first wife, wholly unsupported, that the deceased was not divorced from her, was insufficient to overcome the presumption

of a divorce created by the facts and circumstances in that case. In the case at bar it readily will be seen that no such facts and circumstances are shown and that the great preponderance of the evidence is to the effect that appellant and deceased were not divorced. It results, therefore, that appellant's marriage to Alene Smith Payne was bigamous and void under Section 2097, Kentucky Statutes, which provides that: "Marriage is prohibited and declared void: * * * where there is a husband or wife living, from whom the person marrying has not been divorced."

We conclude, therefore, that appellant was the lawful widow of the deceased at the time of his death and is entitled to share in his estate as a distributee, and that the court erred in dismissing appellant's petition. Conceding that appellee acted in good faith in making the settlement and distributing the estate at the time and in the manner he did, yet he did so at his peril.

With respect to the money distributed by the administrator for funeral expenses, court costs, and other matters which should be paid, we think he should be credited for all such items, provided their lawful purpose or reasonableness in amount is not brought into question.

Upon a return of the case the court will set aside the judgment dismissing appellant's petition, and direct a settlement with appellant as the lawful widow of the deceased.

For the reasons stated, the judgment is reversed and remanded with proceedings consistent with this opinion.