## Sachs et al. v. Title Ins. & Trust Co. et al.
## Same v. Harlan Nat. Bank et al.

April 29, 1947.

Rehearing denied June 17, 1947.

J. S. Forester, Judge.

J. B. Wall, A. E. Funk, Sarah Chancellor, Chat Chancellor and John D. Darnell for appellants.

J. C. Baker and E. L. Morgan for appellees.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming.

These two appeals have been consolidated because

they involve substantially the same question of law and facts.

Prior to 1926 Phillip Sachs and his wife Rebecca were engaged in the mercantile business in Harlan and resided in that city. They were the owners of several parcels of real estate which were encumbered by mortgages in favor of the Citizens National Bank of Harlan and the Title Insurance and Trust Company. In April 1933 the mortgage in favor of the Citizens National Bank was assigned to the Harlan National Bank as trustee. The Sachs defaulted in the payments on the indebtedness secured by these mortgages, and in August 1933 the Title Insurance and Trust Company brought foreclosure action against them, securing a judgment for approximately $12,000, under which the mortgaged property was sold.

On July 27, 1934 the Harlan National Bank as trustee brought an action against the Sachs to enforce the payment of its debt, and recovered a judgment for approximately $6,000. The property covered by that mortgage was sold, in accordance with the terms of the judgment.

In December 1940 Rebecca Sachs brought the present actions for the purpose of having the judgments in the foreclosure actions and the sales held thereunder set aside on the ground that she had no notice of those actions and was not properly before the court. At the time she instituted these actions her husband was dead, and she died while the actions were pending. Following her death the actions were revived in the names of her heirs at law, who are the appellants herein.

The circuit court refused to grant the relief asked for and dismissed the petitions. These appeals followed.

The main ground relied upon for reversal is that the properties were sold without notice to Mrs. Sachs, but, in addition, it is claimed that the sales were void because no refunding bond was executed pursuant to Section 410 of the Civil Code of Practice; that the advertisement of the sale in the action by the Title Insurance and Trust Company was not sufficient under KRS 426.560, and that the admission of testimony of certain witnesses for appellees was prejudicial error.

We will first consider the main question of whether Rebecca Sachs was properly before the court at the time the judgments were entered. When the actions to enforce the mortgages were instituted, both Phillip and Rebecca Sachs were residents of Ohio, and an attempt was made to bring them before the court by constructive service. Pursuant to the necessary affidavits, warning order attorneys were appointed in both cases for the purpose of notifying the Sachs of the nature and pendency of those actions, but the warning order attorney appointed in the Harlan National Bank case failed to file a report, and it is claimed that the warning order attorney appointed in the action by the Title Insurance and Trust Company failed to comply with the provisions of Section 59 of the Civil Code of Practice.

We are forced to agree with appellants that constructive service was never properly obtained on either Mr. or Mrs. Sachs, but appellees contend that constructive service was unnecessary because both Phillip and Rebecca Sachs entered their appearance and through their counsel conducted a vigorous defense. If this is true the failure to obtain proper constructive service on the Sachs would, of course, have no bearing on the question presented here.

The question of whether Rebecca Sachs was properly before the court in these actions depends on the authority of Zeb A. Stewart, a duly licensed, practicing attorney, to enter her appearance to the actions. As we will hereafter point out, Mr. Stewart entered the appearance of Rebecca Sachs as well as the other defendants in the actions, filing various pleadings and taking such steps as were necessary and proper to protect the interest of his clients. It seems that for some years prior to the institution of the foreclosure suits the Sachs were represented by Mr. M. F. Hall, an attorney, and Mr. Hall testified that both Phillip and Rebecca Sachs conferred with him concerning the actions filed by the Harlan National Bank, Trustee, and the Title Insurance and Trust Company, but there was some difficulty about the fee and they advised him that they had discussed the matter with Mr. Stewart. Mr. Hall's testimony is corroborated by his wife who was at that time acting as his secretary.

Mr. Stewart testified positively that he represented Phillip and Rebecca Sachs and the other defendants in both actions, and that he filed various motions, demurrers, answers, and, after the judgments were entered, a motion for an appeal from those judgments. He recalls the circumstances under which he was employed, and states that Phillip Sachs employed him on behalf of all the defendants named in the two actions. He says that Mr. Sachs produced a letter from one of the warning order attorneys and details the payments on account of his fee, including the sum of $15 on August 29, 1934, which he says, to the best of his recollection, was sent to him with a letter signed by both Phillip and Rebecca Sachs. He also states that he served notice on the Harlan National Bank that he claimed a lien on a fund which the bank held for the Sachs, to secure the payment, of his fee. Subsequently the bank paid Mr. Stewart $50 out of that fund on account of his fee earned in the foreclosure cases.

Appellants contend that the testimony of Mr. Stewart and Mr. Hall is incompetent because of the provisions of subsection 4 of section 606 of the Civil Code of Practice, which prohibits an attorney from testifying concerning a communication made to him in his professional capacity by his client without his client's consent. See Carter v. West, 93 Ky. 211, 19 S. W. 592, and Natlee Draft Horse Company v. Marion Cripe & Co., 142 Ky. 810, 135 S. W. 292. We think this provision of our Code has no application here, at least in so far as the testimony of these attorneys concerned negotiations between them and the Sachs relative to their employment as attorneys.

In Kentucky-Virginia Stages v. Tackett, 298 Ky. 78, 182 S. W. 2d 226, 230, we had occasion to consider this question, and we said: "In entering into a contract of employment with a client, an attorney represents himself exclusively and is not acting for his client. Therefore, the terms and scope of his employment are not communications made to the attorney in his professional character by the client. Each deals with the other at arm's length until after the contract of employment has been agreed upon. Therefore, it was not error for the Court to require Mr. Runyon to testify as to the terms of his employment by his client."

Under this decision it is clear that the deposition of Mr. Stewart is competent. He says he was employed to defend the actions for all the Sachs, no distinction being made as to any particular individual, and that it was a general employment to defend the actions on behalf of all defendants. This testimony, in our opinion, is more than ample to show his authority to represent Rebecca Sachs in these actions, and since he did actually represent her, as well as the other defendants, entered her appearance and made such defense as he could, it follows that Rebecca Sachs was properly before the court in both the foreclosure suits.

In 5 Am. Jur., Attorneys at Law, Section 80, page 307, it is said: "It is well established in courts of this country, both Federal and State, that the appearance of a regularly admitted attorney at law is presumptive evidence of his authority to represent the person for whom he appears. This rule applies whether the attorney appears for a natural person or for a corporation; in neither case is it necessary for him to show his authority in order to progress with the suit unless properly demanded. This presumption as to the authority of an attorney to appear and represent his client is, however, usually considered to be a rebuttable one. In other words, when the attorney's authority to appear is properly put in issue, it is competent to rebut this presumption of authority by proof that no such authority was given. According to the weight of authority, a judgment predicated upon an unauthorized appearance by attorney may be set aside even though it may not be subject to collateral attack. The right to assail an unauthorized appearance may, of course, be waived; and until the presumption arising from a voluntary appearance by attorney is overcome by proof, the court will not deny the attorney the privilege of representing his client. The burden of impeaching the authority of the attorney falls, of course, upon the party who claims that his appearance is unauthorized. Such person must show some good cause for so doing, such as that the attorney was appearing for the mere purpose of oppression or for some other sinister purpose, or that there is fraud, accident, or mistake in the appearance."

In the next succeeding section of the text referred to (sec. 81) it is said that the presumption in favor of

the authority of an attorney who makes a voluntary appearance for party to an action cannot be overthrown except by clear, satisfactory and convincing proof. See also King Construction Company v. Mary Helen Coal Corporation, 194 Ky. 435, 239 S. W. 799.

The testimony of Rebecca Sachs, given by deposition prior to her death, falls far short of meeting this test, and we are satisfied from the evidence of Mr. Stewart that he was authorized to and did enter the appearance of Rebecca Sachs to the actions.

Next it is contended that judgments enforcing the mortgages and ordering the sales were erroneous, and that the sales held pursuant thereto were unwarranted because no refunding bond was executed pursuant to the provisions of section 410 of the Civil Code of Practice. In order to dispose of this contention it is only necessary to point out that section 410 of the Civil Code of Practice applies only where a defendant has been constructively summoned, and does not apply where the personal appearance of the defendant has been actually entered. Since we have determined that Mrs. Sachs was properly before the court the section referred to has no application whatever. See Hall v. Bradley, 290 Ky. 120, 160 S. W. 2d 641, and Gray v. Graziani, 165 Ky. 771, 178 S. W. 1070.

The evidence fails to support appellants' contention that the advertisement of sale in the action by the Title Insurance and Trust Company was insufficient under KRS 426.560. This section requires that all public sales of property sold under execution, judgment or decree shall, unless otherwise agreed upon by the parties, be advertised in a newspaper published in the county of the sale at least once a week for three consecutive weeks next preceding the day of sale, but provides that in counties where there is a daily newspaper, publication of the notice of sale for three consecutive days next preceding the day of the sale shall be sufficient.

Kenvin Jackson, an employee of the Harlan Daily Enterprise, a newspaper published in Harlan, testified that the notice of sale was published in only one issue of the paper. The master commissioner says that the notice of sale was not included in the first issues of the newspaper in which the first notice was to appear, but

that this mistake was discovered and the notice did appear in the subsequent issues of the paper. The manager of the Harlan Daily Enterprise, who has custody of its books and records, testified that it is the custom of the paper to conserve one copy of each issue and keep the copies in book form. When giving his deposition he produced the book for the year 1935, and stated that there was a notice of sale advertised in the issues of May 20, 1935, May 27, 1935, and June 2, 1935, and that this notice of sale was in the case of the Title Insurance and Trust Company, trustee, against Rebecca Sachs and others. The preponderance of the evidence shows that the notice of sale was properly published and certainly there is sufficient evidence to sustain the finding of the chancellor in this respect.

It is contended that the testimony of other witnesses is incompetent and that the court committed prejudicial error in overruling exceptions filed to their depositions. The witnesses are J. R. Weiler, A. C. Jones, and I. E. Ettin. The ground on which the exceptions to the testimony of these witnesses is based is that the witnesses testified for themselves concerning transactions with Rebecca Sachs while she was living, such testimony being given after her death. Section 606, subsection 2, Civil Code of Practice.

Before she died Rebecca Sachs gave her deposition, which is a part of the record on these appeals. The effect of her testimony is that after she and her husband moved to Ohio she never returned to Harlan, had never been at the Harlan National Bank, never talked to any one about the foreclosure suits, knew nothing about such suits, and in fact knew nothing about anything. The testimony of these three witnesses shows that Mrs. Sachs was in Harlan on more than one occasion after the foreclosure suits were filed and while they were pending. Paragraph c of subsection 2 of section 606 of the Civil Code of Practice makes an exception to the prohibition against a person testifying for himself concerning transactions with a deceased person where the decedent or his representative has testified against such person. If it be assumed that these three witnesses were testifying for themselves, their evidence as to the presence of Rebecca Sachs in Harlan on the occasions mentioned was competent because in her deposition she had

162

stated positively that she had not returned to Harlan after moving to Ohio. However, we do not think that these three witnesses were testifying for themselves.

J. R. Weiler is the cashier of the Harlan National Bank which, as trustee, was a party to the litigation. It is not shown that he was either a director or stockholder, or otherwise financially interested in the bank which employed him.

A. C. Jones is shown to be Vice-President of the Harlan National Bank, but again it is not shown whether he is a director or a stockholder of the bank, nor is he shown to have any pecuniary interest in the litigation.

The deposition of I. E. Ettin shows that he had testified previously and was recalled. The testimony in the record fails to show what connection, if any, Ettin has or had with the Harlan National Bank or the Title Insurance and Trust Company. We fail to find the first deposition given by Ettin and therefore are not in a position to know whether his previous testimony shows whether he has any financial interest in the outcome of the litigation.

Assuming but not deciding that the fact that A. C. Jones was Vice-President of the Harlan National Bank vests him with such pecuniary interest in the litigation as would disqualify him under the provisions of the Civil Code of Practice, we are still confronted with the fact that he has a right to rebut the statements made by Mrs. Sachs with reference to her presence in Harlan after 1926. In other words, if he does have such an interest in the outcome of the litigation as would prohibit him from testifying for himself against Mrs. Sachs after her death, her evidence would be against him, and under the provisions of par. c of subsection 2 of section 606 of the Civil Code of Practice he had the right to rebut her testimony.

The true test of the competency of a witness under subsection 2, section 606 of the Civil Code of Practice was clearly stated in Trevathan's Ex'r v. Dees' Ex'rs, 221 Ky. 396, 298 S. W. 975, 979. We said: ''The interest of the party to the transaction or communication with the deceased or incompetent person must be a real, direct, pecuniary interest, and one adverse to the repre-

sentatives of the deceased. It has been held in some states that, if the estate of the deceased or incompetent person is not affected by the action, such testimony is competent, and may be received, even if it relates to transactions or communications with deceased or incompetent persons. The interest must also be present, certain, and vested to render the adverse party incompetent, for, if it is of a doubtful character, it affects only the credibility and not the competency of the witness. * * * An interest. by the witness simply in the question involved did not disqualify, but he must have been so interested in the result of the suit as that he would gain or lose directly and immediately thereby, or that the record therein could be used as legal evidence either for him or against him in some other suit as an establishment or disestablishment of the matters testified about by him.''

The facts in this case do not show that these three witnesses had such a real, direct and pecuniary interest in the litigation, or were so interested in the result of the suits as that they would gain or lose directly and immediately thereby.

In Milliken's Ex'x v. Enterprise Machine & Garage Company, 206 Ky. 78, 266 S. W. 878, we held that a bookkeeper owning no stock in the company at the time of the transactions testified to, and disposing of the stock subsequently acquired before testifying, was competent to testify about the entries made on the books in a suit by his employer against a decedent's estate. Of course, a stockholder has a direct and pecuniary interest in the outcome of litigation in which the corporation in which he owns stock is involved, and if it had been shown that these witnesses were stockholders in either the Harlan National Bank or Title Insurance and Trust Company, that fact would have disqualified them except as to matters about which Rebecca Sachs testified to in her deposition. Storey v. First National Bank, 72 S. W. 318, 24 Ky. Law Rep. 1799; Kentucky Stove Co. v. Bryan, 84 S. W. 537, 27 Ky. Law Rep. 136; Massey's Adm'r v. Pike Consolidated Coal Company, Ky., 116 S. W. 276, and see Browns, Bell & Cowgill v. Soper, 287 Ky. 17, 152 S. W. 2d 278, 134 A. L. R. 1385. The mere fact that these witnesses were employees of the Harlan National Bank does not vest them with such

an interest as is meant by the provisions of subsection 2 of section 606 of the Civil Code of Practice. It is true that A. C. Jones testified to some facts about which Mrs. Sachs did not testify in her deposition, but if we assume that he was testifying for himself, and that portion of his testimony was incompetent and improperly admitted, the error was so immaterial that it was not prejudicial.

J. R. Weiler also testified to facts about which Mrs. Sachs did not testify, but there is no evidence in the record to indicate that Mr. Weiler had such interest in the litigation as would warrant us in saying that he was testifying for himself against the estate of Mrs. Sachs.

We have examined this record carefully and considered each of the grounds relied upon by appellants for reversal, but have concluded there were no prejudicial errors committed by the trial court, and that the judgment should be and it is affirmed.