# Goin v. Goin

Jan. 24, 1950.

As Modified on Denial of Rehearing June 23, 1950.

W. B. Ardery, Judge.

Smith & Leary, Clifford E. Smith, and Clyde E. Reed, for appellant.

Philip P. Ardery and Charles L. Hobson, for appellee.

JUDGE HELM—Reversing.

This is an appeal from a judgment of the Franklin

Circuit Court awarding appellee, Edna Goin, damages for alienation of affections of her husband, Willoughby S. Goin, by appellant, Maudie Howell Goin.

Appellee married Willoughby Goin May 22, 1915. They lived together happily for about thirty years. To them were born two children, W. S. Jr., and Lillian Goin Turner, both now grown and married. He left her in October, 1946. On November 12, 1946, appellee filed suit for divorce in the Franklin Circuit Court. A divorce was granted in that action on December 21, 1946. On March 1, 1947, appellee's former husband, Willoughby Goin, married appellant, Maudie Howell Goin. On May 16, 1947, Willoughby Goin died testate, a resident of Franklin County.

On May 28, 1947, this action was filed in the Franklin Circuit Court by appellee, claiming $25,000 as compensatory damages, and $5,000 as punitive damages for alienation of affections of her former husband. At a trial of the action a jury returned a verdict for appellee in the amount of $15,000 as compensatory damages. Appellant appeals.

Willoughby Goin and Shirley Howell formed a partnership known as Howell and Goin Company, general contractors, shortly after the first world war. Some years later Shirley Howell died. A new partnership composed of Willoughby Goin and Sobie Howell was then formed under the name of Howell and Goin Company. Appellant had married Sobie Howell in 1922. Sobie died in 1938, leaving a note willing his one-half interest in the business to Maudie. She had not worked in the business but after the death of her husband she became an active member of the partnership. The partnership business was continued under the name of Howell and Goin Company. The offices of the firm were kept in the home of Willoughby Goin and his wife, Edna, the appellee, at 109 East Fourth Street in Frankfort from November, 1938 to January, 1946. Willoughby and Edna made plans for their daughter Lillian to become bookkeeper for the firm. Lillian, expecting to work for the Howell and Goin Company, prepared herself for this work by completing a bookkeeping course in 1939. The appellant, however, who seems to have had no experience as a bookkeeper up to that time, took over the bookkeeping for the firm so that Lillian was not permitted to work for the Com-

pany but was forced to seek employment elsewhere. Appellee, as housekeeper, did the house work, cleaned the offices, and performed the duties necessary to maintain a properly operated home and office. At first appellee assisted in the work of the firm by helping plan houses.

The testimony for appellee is to the effect that she and her husband, Willoughby, had a happy and congenial home until the latter part of 1945, when she discovered that "something was going on" between her husband and appellant, and that her husband wished her to sue him for divorce. In January, 1946, at Maudie's suggestion, the offices of the firm were moved from the home of appellee and her husband to a location near the railroad tunnel at 106 East Broadway, Frankfort. In the summer or early fall of 1946, appellee and her husband, in what is suggested as a reconciliation between them, planned a trip to Florida for an extended vacation. In the meantime, the home in which they had lived for several years was remodeled. Willoughby, however, abandoned the plans for a trip to Florida and a vacation.

W. S. Goin, Jr., only son of Willoughby, had worked with his father for several years. After the offices of the firm had been moved to the new location at 106 East Broadway, the son testified that he had gone to the office "quite a few times and walked in, and several times when I walked in there was confusion behind the door, a straightening of dresses and things like that, and from then on rather than to put myself in an embarrassing position I would whistle or kick the door two or three times before I went in." He had a key to the office. One day he opened the inner office, got checks and paid the firm's workmen. About that time "Miss Maudie came in from down town and the next morning the lock was changed." After Willoughby died Lucy Dowling and Francis Goin walked to the casket; Maudie was there and said, "Since I have accomplished what I was after, I knew something would happen. I was too happy."

On July 8, 1947, six months and 18 days after Willoughby was divorced from Edna, and four months and 7 days after Maudie married Willoughby, Maudie gave birth to a baby whose father, Maudie says, was Wil-

loughby. The baby weighed 4 pounds and 12 ounces. A physician testified that the average weight of a baby is from 6½ to 7 pounds, and that in his opinion the gestation period of this baby was from 7 to 8½ months.

For appellant, in substance, it was shown that after the death of her first husband she became an active member of the firm of Howell and Goin Company, her principal duties being as bookkeeper; that during the early part of the new partnership her duties did not require more than an hour or so each day; she obtained other employment working for the State in the Personnel Department for a period of about five years. During that period, after completing her day's work in the Personnel Department, she would then go to the offices of the Howell and Goin Company and work there until about 5 or 5:30 p. m. She never, prior to her marriage to Willoughby Goin, said or did anything to alienate the affections of Willoughby from his former wife; she denies the statements made by Mrs. Dowling and by W. S. Goin, Jr. She introduced character witnesses who testified as to her good reputation and moral conduct, and other evidence tending to show that the loss by appellee of the affections of her husband was brought about by her own acts and conduct.

Appellant assigns as errors: (1) Improper remarks of the trial judge; (2) motion for a directed verdict should have been sustained; (3) the trial court erred in the admission and rejection of evidence; (4) evidence of the financial worth of party to an action is not admissible; (5) the trial court is not authorized to limit number of reputation witnesses; (6) the damages were excessive, and (7) the instructions were erroneous.

As the judgment must be reversed for a new trial, it is unnecessary to consider the alleged improper remarks of the trial Judge.

With respect to the appellant's motion for a directed verdict, we have very carefully analyzed all the evidence in the record. The proof, circumstantial and otherwise, was sufficient to support a jury finding that appellant's acts constituted intentional conduct which alienated the affections of appellee's husband. Consequently, appellant was not entitled to a directed verdict.

In Scott v. O'Brien, 129 Ky. 1, 110 S. W. 260,

16 L. R. A., N. S., 742, 130 Am. St. Rep. 149, we directed the instructions that should be given in a case similar to this. The instructions given by the court in this case are substantially the same as the instructions given in that case, except that the item of loss of support was not pleaded in appellee's petition so that it was properly omitted. The latter part of Instruction No. 3, as to financial condition, should have been omitted. We are of the opinion that the evidence was not sufficient to take the case to the jury on punitive damages. For that reason, no instruction should have been given on punitive damages. Otherwise, the instructions were substantially correct.

The admission of the medical evidence above summarized is not prohibited by KRS 213.200. See, Boyd v. Winn, 286 Ky. 173, 150 S. W. 2d 648; Williams v. Tarter, 286 Ky. 717, 151 S. W. 2d 783; H. H. Waegner & Co. v. Moock, 303 Ky. 222, 197 S. W. 2d 254.

Appellant insists that the court was without authority to limit the number of her character witnesses. However, it does not appear that any objection was made to this action of the court.

Appellant urges that she was entitled to prove by third parties declarations or statements made by Willoughby Goin that tended to show his state of mind and feeling toward appellee, his then wife, and his intentions with respect to remaining with or leaving her. The trial court excluded from the jury the testimony of Mrs. L. B. Marshall as to domestic difficulties Willoughby Goin stated he was having with his then wife; declarations showing his state of mind and feeling towards her, and his intentions with respect to remaining with or leaving her. In 20 Am. Jur., page 491, it is said: "Assuming that the state of mind of a person at a' particular time is relevant, his declarations made at that time are admissible as proof on that issue, notwithstanding they were not made in the presence of the adverse party. * * *"

In Willey v. Howell, 159 Ky. 805, 169 S. W. 519, 520, we said: "* * * TJhe real issue in this case was: Did appellant wrongfully and maliciously persuade his daughter to abandon appellee, or did his daughter, induced by the misconduct of appellee, voluntarily leave him? For the purpose of illustrating this issue, it was

competent for the appellant to prove declarations, written or oral, made by the wife of appellee that tended to show her state of mind and feeling towards her husband and her intentions in respect to remaining with or leaving him. Indeed, any relevent circumstances that might serve to show her state of mind and intention were competent. Nor is it material to the competency of evidence of this character whether it was brought to the notice of appellant or not. For example, it would have been admissible in behalf of appellant to prove, by third parties, declarations and statements of the wife of appellee showing her state of mind and her intention, although these statements and declarations were unknown to appellant. Likewise it would have been admissible in behalf of appellee to prove by third persons, from personal knowledge or from information received from the wife of appellee, the agreeable relations that existed between appellee and his wife. Leucht v. Leucht, 129 Ky. 700, 112 S. W. 845, 130 Am. St. Rep. 486.'' We believe appellant was entitled to prove declarations or statements of her husband before the separation which tended to show his state of mind, and that it was error for the court to exclude such statements from the jury.

Over the objection of appellant, the trial court permitted evidence of the financial worth of appellant to go to the jury. In 27 Am. Jur., page 167, section 565, it is said: ''Evidence of the financial condition of the defendant, of how much or how little wealth he has, generally is not admissible in an alienation of affections suit, * * * as affecting compensatory damages to be awarded.'' See 42 C. J. S., Husband & Wife, Sec. 689, p. 341; Givens v. Berkley, 108 Ky. 236, 56 S. W. 158.

In cases of this kind, we believe this to be the better rule. As the evidence was not sufficient to take the question to the jury on punitive damages, it follows that the evidence as to the financial worth of appellant should have been excluded. All other questions are reserved.

The judgment is reversed with directions for proceedings not inconsistent with this opinion.

JUDGE REES not sitting.