v.

DEPARTMENT FOR HUMAN RE-
SOURCES, Commonwealth of Kentucky,
and R. C. K., L. R. K., G. K. K., E. L. K.,
E. L. K., F. M. K., A. S. M. and C. E. M.,
all infants, Appellees.

Court of Appeals of Kentucky.

June 12, 1981.

Discretionary Review Denied Oct. 6, 1981.

James W. Gardner, Central Ky. Legal Services, Lexington, for appellants.

Patricia J. Shipman, Dept. for Human Resources, Frankfort, for appellees.

Neil Duncliffe, Georgetown, guardian ad litem.

Before GANT, HOWARD and HOWERTON, JJ.

GANT, Judge.

This is an appeal from a circuit court order which terminated parental rights to eight infant children. L.K.M. is the natural mother of all eight of the children. W.R.M. is the natural father of three of the children, and is the husband of L.K.M. Five of the children were born out of wedlock to L.K.M. by four different men. These four men were made defendants in this action but failed to appear or defend and are not parties to this appeal. The six oldest children were removed from appellants' home and committed to the Department for Human Resources. The two youngest were removed from the hospital after they were born and the Department was granted custody of them under emergency custody orders.

The circuit court found that termination of parental rights was in the best interest of each of the children. The court found that appellants had abused and neglected the seven oldest children and that the youngest would receive the same treatment if he were placed in the custody of appellants. Appellants argue that the court's findings were clearly erroneous. However, we have examined the record and have found that the court's findings are supported by an overwhelming amount of evidence.

Mr. M. has been married three times and has had five sons and five daughters. Of the five sons, three were in the care of Mr. M. and all three died at the age of approximately one month. Two were never in the care of Mr. M. and both survived.

All of Mr. M.'s surviving children from his first two marriages were committed to the Department for Human Resources in previous actions. At the time of commitment one of his daughters, age four, was diagnosed as having gonorrhea. None of these children has been supported by Mr. M.

One of the sons who died was a son of both appellants and was in their joint care. This child died in January of 1977, just a few weeks before the six older children were removed from appellants' care and were committed to the Department.

Officials of the County Health Department visited appellants' home several times before the children were removed. They observed that the children were extremely dirty and the house had trash and dirt on the floor. The visits were during the autumn and winter, and the weather was cold. The house was also cold. On each visit the parents were more warmly dressed than the children. The children wore light clothing and were barefoot.

The children were in poor health. One or more of the children had the following diseases at various times in 1976 and early 1977: anemia, rickets, worms, pneumonia, impetigo, malnutrition, scabies and lice.

The parents were offered assistance for the children but refused it. A nurse employed by the County Health Department informed Mr. M. on one visit that the children had medical problems and should be brought in for treatment. Mr. M. angrily refused. On another visit an employee of the Department for Human Resources approached Mrs. M. to offer homemaker services, and Mrs. M. threatened her with a gun.

The children are intensely afraid of appellants. Before the children were committed to the Department for Human Resources, Mrs. M. told the children horror stories. She told them monsters and a man with no head would kill the children and put them in a box. In addition, one child said Mrs. M. cut the child's leg with a knife. Another child said the children were spanked with a metal paddle which had been heated on the stove. After the children were committed, they had nightmares following visits from appellants and expressed the desire not to see appellants again.

There was much more evidence in support of the lower court's findings concerning all eight of the children. However, it would serve no purpose to further describe the evidence here. We are familiar with the evidence, and we must conclude because of its overwhelming weight that appellants' argument is frivolous.

■ Appellants criticize the lower court for requesting "memoranda by all parties outlining areas where specific findings should be made." The lower court made this request in response to appellants' motion under CR 52.02 for more specific findings of fact. It appears to us that appellants are criticizing the court for acting on appellants' own motion. In any event, the cases cited by appellants, such as *Callahan v. Callahan*, Ky.App., 579 S.W.2d 385 (1979), and *Kentucky Milk Marketing and Anti-Monopoly Commission v. Borden Company*, Ky., 456 S.W.2d 831 (1970), do not prohibit the court from requesting memoranda from the parties.

■ Appellants state "The court chose to ignore the current situation of the" appellants. This statement is not true. The court indicates in its opinion and order that it did consider the current situation. The court stated:

Counsel for [appellants] has urged that these folks should have another chance . . .

The Court pondered the services that might be available to [appellants] if the children were restored to their custody . . . [N]othing in the evidence would indicate that these parents would do any better in the future than they have done in the past.

The court's finding on this issue is supported by the record. We note, for example, the Mr. M. recently pleaded guilty to a felony and was awaiting sentencing at the time this case was tried.

■ Appellants claim the court should have excluded testimony concerning certain out-of-court statements of the children. Appellants argue that KRS 421.210(2) prohibits introduction of the statements. However, KRS 421.210(2) applies only to witnesses who have a direct and immediate pecuniary interest in the litigation. *Sachs v. Title Ins. & Trust Co.*, 305 Ky. 154, 202 S.W.2d 384 (1947). None of the witnesses whose testimony is objected to had such an interest.

■ Appellants also contend that the children's statements were hearsay. However, we believe the statements were admissible under *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969). Appellants contend *Jett* does not apply because of the informal procedure which the court used in questioning the children. However, our reading of the record indicates appellants agreed to the informal questioning.

■ The children's statements were also admissible under the exception to the hearsay rule allowing declarations that reveal a person's state of mind. The court said in *Goin v. Goin*, 313 Ky. 259, 263, 230 S.W.2d 896, 898 (1950), "Assuming that the state of mind of a person at a particular time is relevant, his declarations made at that time

are admissible as proof on that issue . . ." The children's statements were introduced to show that their state of mind was one of intense fear of appellants. This fear was a relevant issue.

■ Appellants complain that the trial court should not have admitted into evidence certain records kept by social workers. However, we believe that these were business records and met all the requirements of the exception to the hearsay rule allowing introduction of such records. *See Louisville & Nashville R. R. Co. v. Daniel*, 122 Ky. 256, 91 S.W. 691 (1906), and *Buckler v. Commonwealth*, Ky., 541 S.W.2d 935 (1976).

■ Appellants argue that social workers should not have been allowed to express expert opinions. However, we find nothing in the record to indicate that social workers expressed expert opinions on matters outside their expertise. We also find no merit in appellant's contention that one of the witnesses did not have the proper college degree. An expert "may possess the requisite skill by reason of actual experience or long observation." *Kentucky Power Company v. Kilbourn*, Ky., 307 S.W.2d 9, 12 (1957).

■ Appellants claim they were unfairly surprised when the Department for Human Resources called Dr. Paul Stratton as a witness. We see no way in which appellants could have been surprised by this witness. The Department stated in open court in November of 1979 that it wished to call this witness. The witness did not testify until February of 1980. Before the witness testified, appellants were given his written report and were allowed to interview him.

■ Appellants contend that the U.S. Constitution requires that the standard of proof to terminate parental rights be "clear and convincing evidence," rather than "preponderance of the evidence." The U.S. Supreme Court is expected to rule on this issue, but has not yet done so. *See Doe v. Delaware*, 450 U.S. 382, 101 S.Ct. 1495, 68 L.Ed.2d 312 (1981). We hold that there was more than enough evidence to satisfy either standard of proof and to terminate appellants' parental rights.

The judgment is affirmed.

All concur.