## Whittaker et al. v. Thornberry.

March 12, 1948.

Roscoe Conkling, Judge.

832

R. W. Keenon, Hugo Taustine and William Swinford for appellants.

Morris & Garlove for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appeal is from a judgment for $8,000 for personal injuries sustained by Roy Thornberry when, as he claims, he was struck by a bus of the appellants, Ray T. Whittaker, and another, partners doing business as "Blue Motor Coach," on the southeast corner of Liberty and Floyd Streets, in Louisville, on Sunday afternoon, January 6, 1946.

The evidence of the plaintiff, supported by several witnesses, was that the bus was driven up Liberty Street at a rapid speed and, without the driver exercising due care, struck the plaintiff as he was crossing from the south to the north side of the street along the east side of Floyd. The evidence for the defendants, supported by a number of witnesses, was that the bus was driven at a lawful speed, had come to a practical stop on the west side of Floyd Street in order to let a police patrol car or ambulance pass, and was moving very slowly when the plaintiff stepped off the curb into the front corner of the bus; also that he was under the influence of intoxicating liquor. While we regard the weight of the evidence to support the defendants' claims, it seems sufficient to express the opinion that the court properly overruled the defendant's motion for a peremptory instruction. But the judgment must be reversed for what we deem to be errors.

1. The defendants introduced a member of the staff temporarily in charge of the Marine Hospital, an institution of the United States government, Veteran's Administration, to which the plaintiff, Thornberry, was taken from the Louisville General Hospital shortly after having been taken there from the scene of the accident. They offered to prove the records of the hospital pertaining to the plaintiff's case. The court sustained an objection and the defendants made an avowal by means of the doctors' testimony heard in chambers without the hearing of the jury. It was therein developed that the two doctors who had treated the patient were no longer members of the staff and were not in the city. The defendants also presented an employee of the Louisville General Hospital who had the custody of the records of the patients there. She did not know who made the record of the plaintiff's case on the occasion of his admittance and treatment, for the record was not signed and there were a great many physicians at the hospital. This evidence was also rejected.

As stated in a note, 75 A. L. R. 378, there is a conflict among the courts as to whether such evidence is admissible at all and more confusion as to the reason. The weight of authority seems to be that when a proper foundation has been laid, hospital records are admissible as to all matters proper for inclusion in a record of such nature.

It appears that this court has not hitherto ruled upon the point generally. In National Life & Accident Insurance Company v. Cox, 174 Ky. 683, 192 S. W. 636, in an action on an accident insurance policy, it was held that no error was committed by the trial court in refusing to admit in evidence a hospital record containing memoranda of the insured's condition in order to prove the facts therein stated. That decision is sound but is not general authority against the admissibility of such a record because what was sought to be proved was only the noted remarks of a nurse or intern. In Consolidated Coach Corporation v. Garmon, 233 Ky. 464, 26 S. W. 2d 20, the defendant was not permitted to prove by an entry on a hospital chart that the plaintiff had suffered a previous miscarriage. And in Pacific Mutual Life Insurance Company v. Arnold, 262 Ky. 267, 90 S. W. 2d 44, 45, we expressed doubt about the competency of a

hospital record showing previous physical disabilities, citing the Cox case, supra, as authority.

The basic rule is, of course, that the person whose statement is received as testimony should speak from personal observation or knowledge; but the necessities of a case and the trustworthiness which experience has taught have introduced exceptions to the hearsay rule. Thus, there has come down to us the shopbook rule, whereby entries made in the ordinary and regular course of duty by persons not having knowledge of the facts entered are admitted as competent evidence. See Louisville & Nashville Railroad Company v. Daniel, 122 Ky. 256, 91 S. W. 691, 3 L. R. A., N. S., 1190; Joseph Denunzio Fruit Company v. Louisville & Nashville Railroad Company, 276 Ky. 168, 123 S. W. 2d 813.

Following his reasoning for the admissibility of this character of evidence, Wigmore, Section 1530(4), expresses the conclusion that there is no objection to receiving such entries or transactions "provided the practical inconvenience of producing on the stand the numerous other persons thus concerned would in a particular case outweigh the probable utility of doing so." More specifically, it is said in Section 1707: "The medical records of patients at a hospital, organized on the usual modern plan, deserve to be placed under the present principle. They should be admissible, either on identification of the original by the keeper, or an offer of a certified or sworn copy. There is a Necessity; the calling of all the individual attendant physicians and nurses who have cooperated to make the record even of a single patient would be a serious interference with convenience of hospital management. There is a Circumstantial Guarantee of Trustworthiness; for the records are made and relied upon in affairs of life and death. Moreover, amidst the day-to-day details of scores of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action; hence, to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone. The occasional errors and omissions, occurring in the routine work of a large staff, are no more an obstacle to the general trustworthiness of such records than are the errors of witnesses on the stand.

And the power of the Court to summon for examination the members of the recording staff is a sufficient corrective, where it seems to be needed and a bona fide dispute exists."

Wigmore observes in Section 1530(7) that hospital records have been frequently excluded, but points out that: "In view of special circumstances which involve their preparation and use, they have in some states been given (as they should be) by legislation a special status and thus form an additional exception of their own."

The rule of admissibility for a record of this character seems to be provided for in the American Law Institute's Model Code of Evidence, Rules 514 and 516, which, however, has not been adopted in Kentucky.

We conclude that an authenticated hospital chart is admissible in evidence where the party offering it shows the necessity of admitting the record without requiring the person or several persons who made it, or caused it to be made, to testify. It should be further shown that a person or persons having knowledge of the facts, events or conditions made the record contemporaneously, or within such time thereafter as to be part of the transaction, in accordance with the ordinary and regular course of hospitalization, or transmitted the facts for inclusion in the record by one serving in the capacity of an amanuensis, or in line of duty. The court should exercise care, however, to see that there was no contemplative motive for falsification, and that purely self-serving declarations and all extraneous matters are excluded. Annotations, 75 A. L. R. 378; 120 A. L. R. 1124; 32 C. J. S., Evidence, sec. 728.

Under this ruling, it was error to exclude the hospital records, although we do not pass upon any particular item or entry, for the records are not before us.

2. There are other questions raised by the appellants concerning the admissibility or rejection of evidence. They are of less importance and perhaps some of them will not arise on another trial; therefore, we do not consider them.

3. In order to avoid a continuance the plaintiff consented that the affidavit of one of the defendants as to what two absent witnesses would testify, if present,

should be read as their depositions. Civil Code of Practice, sec. 315. After an exchange of comment before the reading of the testimony to be thus presented, in which counsel for the plaintiff referred to it as "this affidavit" and counsel for the defendants as "the deposition," defendant's counsel asked the court for an admonition that it should be considered as the deposition of the witnesses. The court responded: "No, this is the affidavit and the jury will consider it the same as if the witnesses were present and testified in court." In the argument, when the defendant's attorney referred to the testimony of one of the absent witnesses as her deposition, plaintiff's attorney objected to the statement and reference to a "deposition," adding, "They made an affidavit." The ruling of the court was, "I will hold that it is an affidavit." In the concluding argument, plaintiff's attorney said: "It is not enough to knock this man and split his head open, but they have got to show in every way possible they can, even by bringing in an affidavit as to what some drunken woman would have said, if she had been in Court."

Timely objection was overruled.

Everyone knows that in a jury trial testimony given orally carries more weight and is more convincing than testimony given by a formal deposition, and that the weakest sort of evidence is the affidavit of a party as to what he believes an absent witness would testify. This method of producing evidence is founded on expediency. The party finding it necessary to use it suffers a great disadvantage. The advantage thus obtained by the adverse party ought not be abused or employed as a means of further weakening the effect, or perhaps utterly destroying the evidence. The Civil Code of Practice provision, Sec. 315, is that such an affidavit "shall be read as the deposition of the absent witness." The court should be careful not to permit or to leave an impression that it is otherwise. Madisonville, Hartford & Eastern Railroad Company v. Allen, 152 Ky. 706, 154 S. W. 5; Gunterman v. Cleaver, 204 Ky. 62, 263 S. W. 683; Southeastern Greyhound Lines v. Conklin, 303 Ky. 87, 196 S. W. 2d 961. We regard this as prejudicial error.

4. The revision of the Motor Vehicle Law in 1938,

Chap. 106, made inapplicable some of the instructions to juries theretofore approved. This fact has been sometimes overlooked. To particularize, there was a material amendment of the statute in relation to the reciprocal rights and duties of an automobile operator and a pedestrian crossing a street at an intersection. That law is now embraced in KRS 189.570. There were no traffic control signals at the intersection where this accident occurred and each street seems to have been of equal dignity. KRS 189.570(2) declares that the operator of an automobile shall yield the right of way to a pedestrian crossing a roadway within a marked crosswalk or within any unmarked crosswalk at an intersection, and further provides: "If necessary in order to yield the right of way, the operator shall slow down or stop."

In Ramsey v. Sharpley, 294 Ky. 286, 171 S. W. 2d 427, a pedestrian was struck while crossing at a point other than an intersection and came within the terms of KRS 189.570(4). There also was a particular application of the last clear chance rule. The situation in Heskamp v. Bradshaw's Adm'r, 294 Ky. 618, 172 S. W. 2d 447, is like that in the present case except the pedestrian had practically crossed the street when struck, while here he had just started across. Pryor's Adm'r v. Otter, 268 Ky. 602, 105 S. W. 2d 564, 568, is like the Heskamp case, and though it was decided before the present statute was enacted, an ordinance of Louisville required the motorist to yield the right of way to a pedestrian in the act of crossing at that intersection. In that opinion, we construed the provision of the ordinance, and prepared instructions in accordance therewith. The instructions given in the instant case submitting the duties of the defendants' driver substantially follow those forms, with the addition of the factor of excessive speed, which was not present in the Otter case. Regard must be had for the distinction in these cases, namely, that in the Heskamp and Otter cases the pedestrian had passed beyond the middle of the street, while in this case the plaintiff, Thornberry, had just stepped from the curb, or, as the defendants' evidence tended to show, walked into the bus. The instructions did not take the situation or the theory of the defense into consideration.

A pedestrian has no right even under the favorable statute, as said in the Pryor case, to "proceed serenely oblivious of surrounding circumstances." His superior right of passage is not absolute but relative only. A pedestrian and a motorist have equality of right in the street and neither may proceed in disregard of the right of the other, or his own safety. There is no priority of approach. The statutory duties of a motorist and the common law duty of both parties to exercise ordinary care cover that. (1) Where by reasonable judgment or reasonable calculation or estimate of distance, speed and time of both the pedestrian and the automobile, the automobile will probably first reach the point of meeting, it has the right of way under common law and the interpretation we have given this statute and the similar ordinance in the Otter case. (2) Where the pedestrian would probably reach the meeting point first under those conditions, he has the right of way. (3) Where the automobile is so near to the probable point of meeting that if it should continue its course in a careful and prudent way, circumstances considered, and the pedestrian should proceed in like manner, a collision would naturally be expected to follow—in short, if they would reach the point simultaneously—the statute requires the automobile to yield to the pedestrian. The pedestrian is not required to stop and yield to the car. And he may assume that the motorist will use ordinary care to avoid injuring him. But this preference or priority does not give the pedestrian the exclusive control of the entire area of the intersection. It remains his duty to exercise reasonable care to avoid a collision and to proceed with reasonable regard for the approaching automobile and for his own safety. He may not unreasonably ignore an approaching car or intrude himself into the midst of traffic.

Our statute, particularly KRS 189.570 applicable to the case, is in accord with Sec. 38, Uniform Motor Vehicle Act, regulating traffic prepared by The National Conference of Commissioners on Uniform State Laws. The foregoing is the recognized construction of it. Berry, Law of Automobiles, Sec. 3.191; Blashfield's Cyclopedia of Automobile Law, Perm. Ed., sec. 1272; 5 Am. Jur., Automobiles, Sec. 452; Clark v. Feldman, 57 N. D. 741, 224 N. W. 167; Moran v. Gatz, 390 Ill. 478, 62 N. E.

2d 443; Rolfs v. Mullins, 179 Iowa 1223, 162 N. W. 783; Switzer v. Baker, 178 Iowa 1063, 160 N. W. 372; Sherrard v. Werline, 162 Or. 135, 91 P. 2d 344; Malone v. Vining, 313 Mich. 315, 21 N. W. 2d 144; Horwitz v. Eurove, 129 Ohio St. 8, 193 N. E. 644, 96 A. L. R. 782. See also Lucas v. Craft, 161 Va. 228, 170 S. E. 836, in which the given instructions were approved.

The evidence in this case, viewing it more favorable to the plaintiff, is that he could not have gone over three or four steps from the curb. He had seen the bus coming in the middle of the block, west of Floyd Street, as he says, at a rapid speed. The defendant's evidence, as we have said, was that it had practically stopped on the other side of the street and was going very slow. All the evidence is to the effect that the bus stopped almost instantly and the plaintiff was merely knocked down, so it could not have been going very fast at the moment of the impact. It was doubtless the striking of the man's head on the street that caused his most serious injuries.

The instructions recognized and submitted the duties of the driver of the bus, but gave no recognition to his rights or to the duties of the plaintiff with respect to the matter of the right of way. The instruction on contributory negligence was only as to his failure to exercise ordinary care, qualified by a last clear chance provision. The defendants offered instructions submitting plaintiff's specific duties, but they were refused upon objections of the plaintiff. We think the omission of such instruction was error, although we do not pass upon the correctness of the form of the instructions submitted.

It seems to us that the defendants were entitled to an instruction covering their claim that the plaintiff left a place of safety on the curbing and came into the path of or up against the bus. It has long been the law that a motorist need not anticipate that an adult person seen in a place of safety will leave that place and come into a path of danger until that person makes some movement that reasonably indicates that he will do so. Peak v. Arnett, 233 Ky. 756, 26 S. W. 2d 1035; Trainor's Adm'r v. Keller, 257 Ky. 840, 79 S. W. 2d 232. It seems to us that an instruction patterned after that prepared

in Dixon v. Stringer, 277 Ky. 347, 126 S. W. 2d 448, should have been given or incorporated in the more specific instruction relating to the plaintiff's passage over the crossing.

Another theory of the defendants for which there was substantial evidence was that the plaintiff was under the influence of intoxicating liquor. The court refused to give an instruction on this theory. We think the defendants were entitled to an instruction on this point to the effect that if the jury believed the plaintiff was in an intoxicated condition, ordinary care as applied to him meant that degree of care reasonably exercised by ordinarily careful and prudent persons when sober under like or similar circumstances. We have recently approved a form of this character in Hatfield v. Sargent's Adm'x, 306 Ky. 782, 209 S. W. 2d 306, delivered March 5, 1948.

All other questions in the case are reserved.

The judgment is reversed.