**DEPARTMENT FOR HUMAN RESOURCES Commonwealth of Kentucky, Appellant,**

v.

**Sarah Fletcher MOORE et al., Appellees.**

Court of Appeals of Kentucky.

April 8, 1977.

Rehearing Denied July 1, 1977.

J. William Hernandez, Dept. for Human Resources, Office of the Counsel, Frankfort, for appellant.

Paul F. Fauri, Michael C. Davis, Appalachian Research and Defense Fund of Kentucky, Inc., Prestonsburg, for appellees.

Before HOWARD, LESTER and PARK, JJ.

LESTER, Judge.

On November 10, 1974, the Department for Human Resources petitioned the Martin Circuit Court pursuant to KRS 199.600 for an involuntary termination of the parental rights of Bennie and Sarah Moore. Judge Sparks heard the evidence and on December 11, 1975, signed orders terminating the parental rights of the appellees to each of their nine children. The parents then moved the court to make additional findings of fact and amend the judgment or in the alternative moved for a new trial pointing to the failure of the court to find the facts specifically as required by CR 52.01. Judge Hazelrigg who had been elected to succeed the retiring Judge Sparks, heard the motion and ordered that a transcript of the evidence be prepared and that a supplemental hearing be held for additional testimony. On May 7, 1976, the court made findings of fact and conclusions of law and entered an amended judgment which set aside the judgments terminating the parental rights of appellees and ordered the nine infant children returned to the appellees. The Department appeals from this judgment.

The record in this case chronicles the life of a poor mountain family—too many children in too small a space, an unstable marriage, and the absence of the conveniences, facilities or knowledge that attends a comfortable income. Yet in order for the Department to succeed in the termination of parental rights, it must show more than the existence of poverty. It may be that if the Department had put on the case that the facts warranted Judge Hazelrigg would have rendered a judgment in accordance with the Department's petition. However, we do not believe that the evidence here demonstrates sufficient neglect

for us to find that the circuit court abused its discretion.

The Department in making out its case offered evidence from nine witnesses. The complaining witness, Loretta Martin, in November of 1973, received a phone call which resulted in her investigating the Moore's home situation. She found the children living in three separate homes and in one of these, Mrs. Moore's grandmother informed Mrs. Martin that she did not have enough space to keep the children any longer. Mrs. Martin then obtained two temporary custody orders covering all nine children and despite some procedural irregularities, the children have remained in the custody of the Department. Mrs. Martin testified as to the unsanitary condition of the children as she found them and the lack of progress that she felt Mr. and Mrs. Moore had made in providing a home which would have allowed them to regain custody of their children, but she had never personally observed the Moores as a family unit. Sally Mueller, a social worker, visited the house four times prior to the removal of the children and found Mrs. Moore at home twice. Mrs. Mueller testified that she observed adequate physical furnishings. Mary Schmidt, a social service supervisor, viewed the home once before the Department took the children but did not testify that she had witnessed any neglect. Lila Adams, a home health nurse for Martin County Health Care and a neighbor of Mrs. Moore, offered the most extensive statement tending to show that the children did not receive proper care. Mrs. Adams had made numerous visits to the home both in her professional capacity and as a friend. She told of the unhealthy environment of the home and that Mrs. Moore occasionally overlooked administering medicine to her sickly infant twins. She also said that she noticed that the older boys frequently missed school, that Mr. Moore's drinking caused Mrs. Moore on many occasions to take the children out of the home and that during the time of Mr. Moore's imprisonment for child neglect, Mrs. Moore would often leave the children unsupervised for extended periods of time to go to the store. However, Mrs.

Adams also expressed a strong desire to adopt one of the children should the Moores' parental rights be terminated. None of the remaining witnesses, foster care workers, had observed the Moore children in the home with their parents.

Unfortunately, the people who could have presented the most informative evidence about the Moores' family life had left the employ of the Department and did not testify. Mrs. Mullins, a homemaker, had been placed in the Moore home and had substantial contact with the Moore family, but she did not appear although she had been subpoenaed. Raymond Kirk, the social worker who had been directly involved with the Moores from 1972 to 1973, could not be brought into court. Nor could the Department obtain the presence of Dan Warzenski whose social work reports interjected one of the most troublesome aspects of this case. On the whole, the bulk of these reports indicate neglect, but in his last report of October 18, 1972, we find this statement:

> . . . I'm real (sic) uncertain about proceeding with a dependency hearing at this point and I feel we have handled the case inadequately. We have but heresay information and the witnesses I had in mind are leaning towards leaving the children in the home. Maybe I was wrong and exaggerated the weaknesses too much . . .

Clearly this language undercuts Mr. Warzenski's prior accounts and sheds doubt on the Department's entire case.

■ Appellant in its brief argued that the judgment of Judge Sparks could not be reversed by Judge Hazelrigg unless clearly erroneous. Apparently realizing that *Carpenter v. Evans*, Ky., 363 S.W.2d 108 (1962) held directly contrary to this position appellant in its reply brief next expounds the theory that since Judge Hazelrigg essentially tried the case upon depositions, the Court of Appeals can review the record and make a de novo determination. The Department selects a paragraph from 7 Clay, *Kentucky Practice*, 3rd Ed. Civil Rule 52.01 at 162 (1974) to support this proposition. However, nothing in that paragraph suggests so

radical a result when we take into account that it reads,

> (i)t is submitted that the "clearly erroneous" criterion is sufficiently elastic to permit the reviewing court to adopt a method of review which best fits the questions involved and the particular facts in the specific case under consideration. Certainly the court should not ignore the findings of the trial judge simply because his conclusions were based on testimony taken by deposition. On the other hand, the reviewing court should not be bound by the trial court's findings if convinced the doubtful credibility of the witnesses has led the trial judge to a wrong conclusion. As a practical matter, the Kentucky Court of Appeals will probably review a case tried on deposition according to its concept of what is most appropriate and fair in the administration of justice.

 With the proper standard of review in mind, we next turn to the applicable statutes KRS 199.600 and 199.011. KRS 199.600(1) provides, "(i)n a proceeding involving a neglected or abandoned child, as defined in KRS 199.011, the circuit court may terminate all parental rights of the parents of such child . . ." KRS 199.-011 defines an abused or neglected child to be

> a child whose health or welfare is harmed or threatened with harm when his parent, guardian or any other person: inflicts or allows to be inflicted upon the child, physical or mental injury by other than accidental means; creates or allows to be created a risk of physical or mental injury to the child by other than accidental means; commits or allows to be committed an act of sexual abuse upon the child; willfully abandons or exploits such child; does not provide the child with adequate care and supervision; food clothing and shelter; education; or medical care necessary for the child's well being . . .

The wording of these statutes leads us to the conclusion that in proceedings of this nature the trial court has a great deal of discretion to determine whether the child fits within the abused or neglected category and whether the abuse or neglect warrants termination. But in terminating parental rights, the court must state specifically the facts which justify its decision. This Judge Sparks did not do. Judge Hazelrigg reviewed the transcript of evidence and heard additional testimony at a supplemental hearing. In making the findings of fact, he decided that the Department had not made the required showing. Even if we may have reached a different result, we cannot find so convincing a case in the tangled evidence of this record to allow us to reverse the court below.

Judgment is affirmed.

All concur.