v.

DEPARTMENT FOR HUMAN RESOURCES Commonwealth of Kentucky and J. J. E., Appellees.

No. 80–CA–2363–MR.

Court of Appeals of Kentucky.

Jan. 8, 1982.

Discretionary Review Denied Oct. 6, 1982.

Elise Givhan Spainhour and John E. Spainhour, Givhan, Spainhour & Spainhour, Shepherdsville, for appellant.

William J. Frances, Asst. County Atty., Louisville, J. William Hernandez and Paul Fauri, Dept. for Human Resources, Frankfort, for appellees.

Before GANT, HOWERTON and WHITE, JJ.

GANT, Judge.

This appeal emanates from a judgment terminating the parental rights of the parents of a now six-year-old child. This termination followed a five-year history of this family which had its first chapter before the birth of this child, at a time when the appellee Department for Human Resources was investigating neglect of an older sister.

This five-year history is a tragic one. As the mother is not a party to this appeal, her compendium will be omitted. The record reveals that the father was admitted to Central State Hospital, on a voluntary basis, in September, 1977; June, 1978; and March, 1979. In each admission, his diagnosis was "schizophrenia, paranoid type." A perusal of his mental, psychiatric and psycho-social evaluations draws a distinct and unclouded portrait of a man in his mid-thirties, with an IQ in the upper 50's. He is described as extremely depressed, suffering from visual and auditory hallucinations, with little judgment and no insight. The evaluations of the child articulate tragically the story of a boy with central nervous system dysfunction, severe speech and language difficulty, and of borderline range of intellectual ability. His evaluations further clearly indicate that the child made progress in foster home situations after removal from the home of his parents.

It is the admission of these records, compiled at Central State Hospital and at the Child Evaluation Center of the University of Louisville Medical Center, which furnishes the first basis for allegation of error. It is uncontested that the records were introduced by their custodian and also that they were available to the appellant prior to trial. None of the authors of these evaluations and reports was subpoenaed by appellant or appellee, and appellant sought to exclude them on the ground of hearsay.

It is our opinion that all of these records fall within the shopbook rule. That rule, as stated in Lawson, *Kentucky Evidence Law Handbook,* Sec. 8.65, p. 169, is as follows: "The records of account of a party may be introduced into evidence if such records (i) constitute original entries, (ii) were made in the regular course of business, and (iii) were made at or near the time of the transaction which they represent." The shopbook rule has been in effect for centuries in both English and American courts. As the court pointed out in *Louisville & Nashville R.R. Co. v. Daniel,* 122 Ky. 256, 264, 91 S.W. 691 (1906), the rule adapts itself logically to conditions undreamed of at its origin, "... proving the wisdom and elasticity of the systems." The shopbook exception to the hearsay rule was extended to medical and hospital records in criminal proceedings in *Buckler v. Commonwealth,* Ky., 541 S.W.2d 935 (1976). One rationale in that case was that the requirement of necessity, i.e., the requirement of showing that the person who made the record was not available, which requirement was always present in the shopbook rule, was met by the knowledge that to require the attendance of all persons who had compiled the record for one single patient would totally disrupt the orderly procedure and management of a hospital facility.

This Court further extended the shopbook rule to apply to records compiled by social workers in termination proceedings, as long as the three requirements enumer-

ated by the rule were met. *See L.K.M. v. Dept. for Human Resources,* Ky.App., 621 S.W.2d 38, 39 (1981). The rationale behind this extension was that numerous social workers were involved in each case, many of whom were no longer connected with the Department, and that chaos would result with the requirement of personal attendance. Further, we are dealing with the awesome responsibility of a trial judge to determine the fate of a family unit and the necessity that he have available to him all pertinent information.

The records in question here were compiled during a long association by DHR with the father and the child, extending over a five-year period. The records were made while the Department was seeking to work with a family unit, parents and child, for their common good. They were original entries, made in the regular course of business, and were made at or near the time of the transactions which they represent.

It is our opinion that, when hospital records or psychiatric and psychological evaluations of parents or their child are offered into evidence in a termination proceeding by the proper custodian of same, they may be admitted under the shopbook rule.

Appellant next argues that there was no proof of neglect as required under KRS 199.603. As the lower court stated, the statute does not require that this neglect be intentional. KRS 199.011(6) defines a neglected child as one whose health or welfare is harmed or threatened with harm when the parent "does not provide the child with adequate care and supervision ... or medical care necessary for the child's well-being ..." As Judge Revell stated: "[We] have here a situation where the child requires special care and training because of his numerous deficiencies, and the father because of his mental deficiency and emotional illness is unable to care for the immediate and ongoing physical and psychological needs." Under the

evidence herein, we cannot say that this finding was erroneous.

The judgment is affirmed.

All concur.