G.E.Y., Appellant,

v.

**CABINET FOR HUMAN RESOURCES,**
Commonwealth of Kentucky; C.M.B.;
A.M.Y., an infant; and C.K.Y., an infant, Appellees.

Court of Appeals of Kentucky.

June 28, 1985.

Rehearing Denied Nov. 15, 1985.

Discretionary Review Denied
and Opinion Ordered
Published by Supreme Court
Jan. 28, 1986.

Miriam Harmatz, Appalachian Research & Defense Fund of Kentucky, Inc., Columbia, for appellant.

William K. Moore, Cabinet for Human Resources, Frankfort, M. Gail Wilson, Jamestown, Hollis E. Edmonds, Russell Springs, for appellees.

Before CLAYTON, DUNN and McDONALD, JJ.

McDONALD, Judge:

This is an appeal from the judgment of the Russell Circuit Court terminating the parental rights of the appellant, G.E.Y., in his two children, A.M.Y., and C.K.Y. The parental rights of the children's mother, C.M.B., were also terminated, but she has not appealed to this court.

The issue before us is whether the appellant's rights to due process were violated by the court's ruling allowing the appellee, Cabinet for Human Resources (C.H.R.), to introduce into evidence the appellant's criminal court records and the entire C.H.R. case record of its involvement with the appellant and his children. G.E.Y. argues that the admission of this evidence denied him of the "fundamentally fair procedures" mandated by our U.S. Supreme Court in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). We agree and therefore reverse the judgment of the circuit court.

The issue concerning the admission of the Cabinet's case records has been previously addressed by this court in *L.K.M. v. Dept. for Human Resources*, Ky.App., 621 S.W.2d 38 (1981), and *O.C.E. v. Department for Human Resources*, Ky.App., 638 S.W.2d 282 (1982). In both, this court upheld the entry of D.H.R. (now C.H.R.) records on the basis that they fell within the shopbook rule exception to the hearsay rule. The rationale for extending this rule, originally designed to allow the entry of accounts or records compiled in the business world, to records compiled by social workers, was one of necessity. The court reasoned that as there were many social workers involved in each case or numerous records gathered from various other agencies, requiring attendance of all those involved at trial would be too burdensome or even impossible. The appellant argues that these cases are distinguishable as there was no showing of necessity in his case for the introduction of the record which even C.H.R. admits is replete with inadmissible hearsay. As there were only a few social workers involved in this matter and as they did testify at the hearing, we could decide this case on the basis that there was no necessity to admit the objectionable material. However, in light of the clear mandate of the *Santosky* case, *supra*, that the states provide parents with fundamentally fair procedures in termination proceedings, we believe the rationale in *L.K.M.* and *O.C.E.*, *supra*, for extending the shopbook rule to social worker's records needs to be re-examined.

■ Neither the *L.K.M.* case nor the *O.C.E.* case mentions the element of "trustworthiness" that must be present in order for documents, records or reports to qualify for admission into evidence under the exception created for business records. *See* R. Lawson, *Kentucky Evidence Law Handbook* § 8.65 (2d Ed.1984); *Gus Dattilo Fruit Co. v. Louisville & N. R.R. Co.*, 238 Ky. 322, 37 S.W.2d 856 (1931). It is this element "which the law considers a substitute for the oath of the declarant, observation of his demeanor by the jury, and his cross-examination by the party against whom the hearsay is offered." *Buckler v. Commonwealth*, Ky., 541 S.W.2d 935, 937 (1976). It is this element which we believe to be inherently lacking in the Cabinet's case records.

Unlike the medical records discussed in *Buckler, supra,* the Cabinet's records are not "made and relied upon in affairs of life and death," nor are they necessarily compiled by trained professionals. The worker's narrative record in the instant case contains, in part, bits and pieces of gossip gathered from all over creation, the sources of which are frequently unidentified. The record contains the subjective and unverifiable impressions of the workers and their contacts of G.E.Y. and letters from third parties who did not testify containing highly inflammatory and prejudicial accusations against the appellant.

From the moment C.H.R. becomes involved with a dependent child, its social workers are aware of the potential for termination proceedings and have, as the *Santosky* court noted, an "unusual ability to structure the evidence [which] increases the risk of erroneous factfinding." *Id.* 455 U.S. at p. 763, n. 13, 102 S.Ct. at p. 1400, n. 13. Thus, although the Cabinet may be working to reunite the family, once the child is committed to its care its record is compiled with the possibility of litigation in mind and the concomitant necessity to provide documentation to justify any decision it makes inimical to that of the interests or rights of the parent. In the instant case much of the C.H.R. record and the damaging hearsay evidence therein was compiled *after* C.H.R. made its determination to seek the termination of appellant's parental rights and thus at a time when its position was clearly antagonistic to that of appellant.

■ The appellee, C.H.R., argues that admission of this evidence does not require reversal because the matter was heard by a judge and not a jury. It argues that a judge, trained in the law, is capable of discerning "the grain from the chaff, and to decide the case alone upon the law ...." *Andrews v. Hayden's Adm'rs*, 88 Ky. 455, 11 S.W. 428 (1889). It is apparent in this case, however, that the court was not able to so distinguish between that evidence which was competent and that which was not. For example, its finding that "there was some evidence that he [G.E.Y.] had abused and mistreated some little children belonging to one of his wives" was based on the recording in the case record by the social worker assigned to appellant's case who had obtained this information from a social worker in Frankfort who had allegedly received a phone call from a man in West Virginia claiming that his sons had complained to him of being abused by the appellant.

■ We agree when a judge acts as a fact finder it is presumed that he will be able to disregard hearsay statements. However, where, as here, it is apparent that he relied on the hearsay in making his decision, the error in the admission of the unreliable evidence cannot be deemed harmless or nonprejudicial. As the court noted in *Santosky,* citing *Woodby v. INS,* 385 U.S. 276, 282, 87 S.Ct. 483, 486, 17 L.Ed.2d 362 (1966), "[J]udicial review is generally limited to ascertaining whether the evidence relied upon by the trier of fact was of sufficient *quality* and *substantiality* to support the rationality of the judgment." *Id.,* p. 757, n. 9, 102 S.Ct. at p. 1397, n. 9. (Emphasis our own.) Here, the evidence meets neither test.

■ C.H.R. further argues that appellant was not prejudiced by the introduction of its case record as he had ample time

after its introduction to "supplement the record with any depositions or other evidence attacking the Cabinet's records." This argument, however, fails to recognize that such opportunity does not cure the appellant's inability to confront and cross-examine adverse witnesses, or his ability to bring out any possible bias or motive for their testimony. *See Goldberg v. Kelly,* 397 U.S. 254, 268, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287, 299 (1970).

Considering the risk of error in allowing such a record into evidence and the consequences involved, we believe its introduction to be inconsistent with the appellant's due process rights. The shopbook rule may be appropriately relied upon for the introduction of certain materials in a C.H.R. case record, for example, reports gathered from doctors or psychologists, but it may not be utilized for the unrestricted infusion of materials not otherwise admissible under our rules of evidence.

As far as the admission of appellant's criminal records are concerned, we believe that the introduction of appellant's prior criminal convictions are relevant on the issue of appellant's violent nature, mental state and thus his general ability or fitness to parent. However, the prejudicial effect of evidence of arrests or warrants for which no conviction resulted outweighs any probative value such evidence would have on those issues.

The decision of the Russell Circuit Court is reversed and remanded for further proceedings consistent with this opinion.

All concur.