CABINET FOR HUMAN RESOURCES, Commonwealth of Kentucky, Appellant,

v.

E.S. and H.S., An Infant, Appellees.

Supreme Court of Kentucky.

April 30, 1987.

Ryan Halloran, Acting Gen. Counsel, Patricia J. Shipman, Office of the Counsel, Cabinet for Human Resources, Frankfort, for appellant.

Stephen A. Sanders, Appalachian Research & Defense Fund, Prestonsburg, for appellee, E.S.

David Barber, Prestonsburg, for appellee, H.S.

LEIBSON, Justice.

We have accepted discretionary review of a Court of Appeals opinion reversing an order of Floyd Circuit Court terminating the parental rights of E.S. as to her child, H.S. The child was born out of wedlock to an unknown father on December 14, 1983, removed from the family home on February 6, 1984 pursuant to an emergency removal order obtained from the District Court, and placed in the custody of the Cabinet for Human Resources (CHR) two days later. After numerous attempts at home visitation, CHR filed a Petition for Involuntary Termination of Parental Rights on November 15, 1984. The case was tried in circuit court on August 23, 1985.

The trial court found that "the natural mother has substantially and continuously and repeatedly abused or neglected the infant Respondent and has refused to give the infant Respondent the proper parental care and protection," terminated the mother's parental rights, and vested custody and control of the infant in CHR "with authority to place said child for adoption." The Court of Appeals held that the trial court erred by admitting into evidence CHR's case record and by finding that the evidence of neglect was sufficiently clear and convincing to justify a termination of E.S.'s parental rights. It is not clear from the Court of Appeals' opinion whether the holding of the Court of Appeals is to reverse and remand or to reverse and dismiss.

We have accepted discretionary review. The issues on discretionary review are somewhat more limited by the state of the record than would appear from the Court of Appeals' decision. The two issues are:

1) Only a portion of the case record was used as evidence. This was an extensive series of entries made into the record by a social worker, Maria J. Bradley, covering the period from April 12, 1984 to August 19, 1985, which CHR claims were properly admitted under the business records exception to the hearsay rule, and which E.S. claims were inadmissible hearsay.

2) E.S. claims that with or without this record the evidence was insufficient to support the findings and conclusions of the trial court, and further claims that the Court of Appeals' decision "reversing" should be interpreted as a decision to reverse and dismiss, rather than a remand.

We have decided that:

1) Portions of the social worker's records were admissible under the business records exceptions, but other portions were not and their use was reversible error: and

2) There was sufficient evidence presented to the trial court so that, utilizing the clear and convincing evidence standard, the finding of the trial court that the mother had substantially and continuously and repeatedly neglected the child and the conclusion that the mother's parental rights should be terminated was not an abuse of discretion.

Therefore, we reverse for trial error but we remand for a new trial because the evidence is not insufficient.

The portion of the case record prepared by Maria Bradley, as included in the transcript, consists of 19 closely written pages with approximately 90 separate entries. These entries may be characterized as partly factual and partly opinions and conclusions. Bradley was the only social worker that went to E.S.'s home on a regular basis during the period in question, and her information was critical on a multitude of subjects, including the relationship between E.S. and H.S., conditions in the family home and between members of the family, and the circumstances of child care not only of H.S. but also for a sibling who was not removed from the home. Bradley's entries stated her observations and conclusions about what she saw, the services that she offered, and the responses to those services.

Although our Court has not previously addressed the admissibility of entries by social workers into the records of the Department of Social Services, there are three Court of Appeals' decisions discussing the problem. In two cases, *L.K.M. v. Dept. for Human Resources*, Ky.App., 621 S.W.2d 38 (1981) and *O.C.E. v. Dept. for Human Resources*, Ky.App., 638 S.W.2d 282 (1982), the Court of Appeals upheld the admissibility of social services records. But in the latest case, *G.E.Y. v. Cabinet for Human Resources*, Ky.App., 701 S.W.2d 713 (1986), a different Court of Appeals panel held that the business records exception should

not be extended to social workers' records because they lacked "the element of 'trustworthiness' that must be present in order for documents, records or reports to qualify for admission into evidence under the exception created for business records." *Id.* at 715. Thus the opinions of the Court of Appeals are in conflict.

In *Buckler v. Commonwealth*, Ky. 541 S.W.2d 935 (1976), we decided that hospital records are admissible under the business records exception to the hearsay rule. Further, we overruled an earlier case, *Whittaker v. Thornberry*, 306 Ky. 830, 209 S.W.2d 498 (1948), which had held such a record is admissible only where "the party offering it shows the necessity of admitting the record without requiring the person or several persons who made it, or caused it to be made, to testify." 209 S.W.2d at 501.

In *Buckler* we state:

"[T]he necessity requirement for the introduction of this type of hearsay evidence is satisfied by the very nature of the evidence sought to be introduced. We therefore feel it serves no useful purpose to require any further showing of the necessity of admitting the medical records." 541 S.W.2d at 938.

The *Buckler* rule was extended to other kinds of business records in *Garner v. Commonwealth*, Ky., 645 S.W.2d 705 (1983). Thus the question of the admissibility of business entries does not turn on the necessity principle, and the availability of the person making the entries is not the issue. Nevertheless, there are other specific requirements which must be met before this exception to the hearsay rule can be utilized. These are summarized in Lawson, *The Kentucky Evidence Law Handbook*, 2d ed., § 8.65(B) as follows:

"Regular Business Entries: A record (memorandum, report, documents, etc.) of an act, event, condition, or diagnosis, is admissible to prove that act, event, condition or diagnosis if the record (i) constitutes an original entry, (ii) was made in the course of regularly conducted business activity, (iii) was made at or near the time of the phenomenon which it represents, and (iv) was made under

circumstances which do not indicate a lack of trustworthiness."

The problem in the present case centers on # (iv), the question of "lack of trustworthiness."

CHR claims that entries by a social worker carry with them the same element of trustworthiness as entries by hospital personnel. On the other hand, the opposite position is well stated in *G.E.Y. v. Cabinet for Human Resources, supra,* at 715:

"From the moment C.H.R. becomes involved with a dependent child, its social workers are aware of the potential for termination proceedings and have, as the *Santosky* court noted, an 'unusual ability to structure the evidence [which] increases the risk of erroneous fact-finding.' [*Santosky v. Kramer,* 455 U.S. 745, 763, n. 13, 102 S.Ct. 1388, 1400, n. 13, 71 L.Ed.2d 599 (1982)]. Thus, although the Cabinet may be working to reunite the family, once the child is committed to its care its record is compiled with the possibility of litigation in mind and the concomitant necessity to provide documentation to justify any decision it makes inimical to that of the interests or rights of the parent."

In the present case, as in *G.E.Y.,* "much of the CHR record and the damaging hearsay evidence therein was compiled *after* CHR made its determination to seek the termination of appellant's parental rights." Bradley made a recommendation to her supervisor that E.S.'s parental rights should be terminated in August 1984, four months after she was assigned to the case. Most of her entries in the case record relate to the extended period of time thereafter when she continued to be the principal social worker on the case.

■ However, while we cannot rule out that these circumstances could color the judgment of the social worker in making her entries, subconsciously or otherwise, we see no reason to accept the premise that she would deliberately mischaracterize factual observations. Therefore, it is the opinions and conclusions expressed in the social worker's records, rather than the factual observations, which cause difficulty. We hold that those entries in the case record made by the social worker which constitute statements of factual observations are admissible under the business entries exception to the hearsay rule, and those statements which express opinions and conclusions are not.

■ The fact that the social worker was unavailable for a reason which CHR could not have anticipated, does not make this evidence admissible when it is otherwise inadmissible. Such circumstances may constitute grounds for requesting and obtaining a continuance, or for admitting testimony through the procedure in CR 43.03 if the other side should consent in lieu of a continuance. But Bradley's temporary unavailability does not trigger the business records exception to the hearsay rule.

■ There is another special problem underlying the admissibility of Bradley's opinions and conclusions. Such opinions and conclusions are expert testimony, and no evidence was offered to establish her qualifications to express the opinions and conclusions of an expert. Unlike records made by hospital personnel, whose qualifications can usually be gleaned from the entries themselves, signed as "M.D.," "R.N.," or "L.P.N.," there is nothing in the evidence here to establish that the social worker had any particular expertise. This particular circumstance would render the opinions and conclusions entered into the record inadmissible evidence even if they were otherwise qualified as regular business entries. But this does not change the character of the underlying question because Bradley's opinions and conclusions as an expert, even if she were proved qualified, would fail the test of admissibility pertaining to regular business entries in any event for reasons related to trustworthiness previously stated in the decision of *G.E.Y. v. Cabinet for Human Resources, supra.*

■ Thus it is necessary to hold that there was trial error in the admissibility of Bradley's entries *in toto,* as was done. Because CHR's counsel conceded that Bradley was the only social worker that went to the home on a regular basis for an

extended period preceding the trial, and that her information was critical, the admissibility of such testimony would constitute grounds for reversal even if CHR's other evidence in the case were to be considered overwhelming in nature.

This brings us to the second issue. E.S. claims that CHR's evidence is not only short of overwhelming but insufficient to support a finding that this qualifies as a case justifying involuntary termination of parental rights. Under KRS 199.603(1)(b), parental rights may be terminated because "the child has been substantially or continuously or repeatedly neglected or abused." KRS 199.603(3) includes among the "[f]actors to be considered by the court ...":

> "(c) Repeated or continuous failure by the parents to provide the child with adequate food, clothing, shelter, or other care and control necessary for his physical, mental, or emotional health and development except that poverty alone shall not be grounds for involuntary termination of parental rights."

■ There was ample evidence to the effect that this child was suffering from malnutrition (indeed starvation) and that the mother was unwilling and incapable of providing for the child. The appellee claims that lack of care can be explained on the basis of "poverty alone," but on this point both the evidence and the reasonable inferences from the evidence are conflicting. If the evidence presented by CHR is believed, we cannot say that there was not "clear and convincing evidence" to justify termination of parental rights, as required by the United States Supreme Court decision in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) and by our own decision in *N.S. v. C. and M.S.*, Ky., 642 S.W.2d 589 (1983).

Therefore, the decision of the Court of Appeals is reversed as to the admissibility of those entries made by the social worker which state factual observations, and affirmed as to those entries made by the social worker which reflect opinions and conclusions. Obviously, in some instances it will be difficult for the trial judge to decide whether a given statement should

be classified one way or the other. In such instance the rule of inadmissibility should apply.

The within case is remanded to the trial court for further proceedings consistent with this opinion.

STEPHENS, C.J., and STEPHENSON and WINTERSHEIMER, JJ., concur.

LAMBERT, J., concurs in this opinion and by separate opinion.

GANT and VANCE, JJ., dissent.

LAMBERT, Justice, concurring.

Inasmuch as we are reversing and remanding this case for further proceedings, I take this opportunity to comment upon the trial court's fact-finding.

In the order terminating parental rights, the one and only finding of fact which related to the mother's care of the child was as follows:

That the infant Respondent, H.S., is an abused or neglected child; that the natural mother has substantially and continuously and repeatedly abused or neglected the infant Respondent and has refused to give the infant Respondent the proper parental care and protection.

The above quoted "finding of fact" is merely a paraphrase of the involuntary termination statute, KRS 199.603. Such a finding does not comply with the requirements of CR 52.01.

In a case of this type, it is essential that appellate courts be informed of the trial court's view of the controversy so that we may adequately discharge our duty of meaningful review. See generally W. Bertelsman & K. Philipps, *Rules of Civil Procedure Annotated*, (7 *Kentucky Practice*) Author's Comment, 225–229 (4th Ed. 1984). The trial court's findings do not inform us of any act or acts of abuse or neglect or failure to give proper parental care and protection. In *Department for Human Resources v. Moore*, Ky.App., 552 S.W.2d 672 (1977) at p. 675, the Court of Appeals said:

But in terminating parental rights, the court must state specifically the facts which justify its decision.

I believe this is a proper standard for the trial court in involuntary termination cases and suggest that it be observed upon remand.